[No. H017023. Sixth Dist. Dec. 10, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN T. WILLIAMS, JR., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts V, VI, VII and VIII.

**COUNSEL**

Paul Bernstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyear, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WUNDERLICH, J.—**

## I. *Introduction*

In May 1997, after a trial, defendant John T. Williams, Jr., was committed to Atascadero State Hospital (ASH) for one year of involuntary treatment under the Mentally Disordered Prisoners Act (MDPA), Penal Code section 2960 et seq.[1] The MDPA requires a court to commence trial at least 30 days before a defendant is scheduled for release from parole unless he or she waives time or the court finds good cause. Here, trial commenced after defendant's scheduled release date. Although defendant did not object to the trial date, he did not waive time; nor did the court hold a hearing on the issue of good cause or make an express finding that there was good cause for the delay in commencing trial.

We hold that the trial court's failure to comply with the statutory procedure concerning commencement of trial did not divest it of fundamental jurisdiction to proceed, and we further hold that defendant's failure to object to the trial date waived any claim of error based on noncompliance with the procedure. We also hold that the trial court did not automatically lose jurisdiction to proceed after defendant's scheduled release date.

---

[1]Unless otherwise specified, all further statutory references are to the Penal Code.

## II.  *Statement of the Case*

In December 1991 defendant was convicted of assault and indecent exposure and sentenced to three years in prison. In 1993, while serving his term, he was transferred to ASH for psychiatric treatment. After defendant completed serving his sentence, he was retained at ASH for continued involuntary treatment as a condition of parole. Prior to his scheduled release from parole on May 18, 1997, the Santa Clara County District Attorney filed a petition seeking an additional year of commitment and involuntary treatment for defendant as a mentally disordered offender (MDO). After a trial on the petition, the jury found that defendant was dangerous due to his mental disorder, and the court committed him for an additional year. Defendant now appeals from the order of commitment.[2]

Defendant contends the trial court lacked jurisdiction to conduct a commitment trial because it failed to comply with the statutory time requirement for commencing trial. Alternatively, he contends the court lost jurisdiction to proceed on the day he was scheduled for release from parole. Thus, he claims the May 1997 commitment order is null and void. Defendant also contends that if trial counsel's failure to object before trial waived any claim based on noncompliance with the statutory procedure, then counsel failed to provide effective assistance.

Concerning his trial, defendant contends that the court erred in (1) telling jurors they would decide whether defendant would be released or confined, (2) qualifying a social worker as an expert witness, (3) sustaining an objection to a question defense counsel asked the social worker, and (4) misdefining "reasonable doubt" for the jury.

We affirm the order of commitment.

## III.  *Facts*

In a commitment trial, the determinative issues are whether the defendant has a severe mental disorder that is not in remission or cannot be kept in

---

[2]The commitment order expired on May 18, 1998. (See § 2972, subd. (e) [commitment period of one-year from scheduled release date].) However, in their briefs, both parties indicate that defendant was recommitted in May 1998 and presumably again in May 1999. Although these subsequent commitment orders are not part of the record on appeal, the validity of the May 1997 order implicates their validity. Moreover, because the issues raised here are important and of continuing interest, we have inherent power to retain the matter, even if it is technically moot. (*Burch* v. *George* (1994) 7 Cal.4th 246, 253, fn. 4 [27 Cal.Rptr.2d 165, 866 P.2d 92]; *City of Morgan Hill* v. *Brown* (1999) 71 Cal.App.4th 1114, 1121, fn. 5 [84 Cal.Rptr.2d 361].) For these reasons, we address the merits of the appeal.

remission without further treatment, and whether the defendant presents a substantial danger of physical harm to others due to the disorder. (§§ 2970, 2972.)

Here, Dr. William Walters, a psychiatrist and chair of the psychiatry department at ASH, testified that defendant had been under his care since early 1996 and suffered from three severe mental disorders: schizophrenia, paraphilia, and voyeurism. Schizophrenia, Walters explained, causes delusions and/or defective perceptions and can lead to social withdrawal and isolation. At that time, defendant did not exhibit signs of psychotic thinking because he was taking medication that controlled it. Moreover, defendant had assured Walters he would continue to take his medication, although, according to Walters, he had in the past said he would not do so. Walters opined that defendant's judgment remained impaired but his schizophrenia would remain in remission as long as he took his medication.

Walters next explained that paraphilia is a sexual disorder that affects judgment and behavior, in that one's intense urges cause him or her to act out sexual desires. Paraphilia can involve having fetishes, using inappropriate sexual objects, and making obscene phone calls. Walters opined that defendant's paraphilia was not in remission.

Voyeurism, Walters said, is a mental disorder that involves fantasizing and masturbating while secretly watching partially clad women or women in the act of undressing. Although the technical description of the disorder implies that the woman must be undressing, Walters explained that the description is a guideline and not an inflexible definitional requirement. Walters opined that defendant's voyeurism was not in remission.

In support of his opinions, Walters related defendant's history of sexually oriented behavior. Walters noted that in 1989, defendant attempted to kidnap his girlfriend under circumstances that demonstrated, to Walters, sexual aggression toward women with whom he had a real or imagined relationship. In 1991, defendant masturbated while following a female jogger in his car, then stopped and attacked her. He was convicted of assault with intent to inflict great bodily injury and indecent exposure. Between 1991 and 1996, while incarcerated, defendant stalked female nurses. Although he curtailed this conduct when warned, he did not completely stop it.

Walters further related that in 1995, while defendant was at CONREP, a conditional-release outpatient program, he was arrested for making hundreds of obscene phone calls. Initially he admitted making the calls but later denied doing so. In November 1996, defendant physically prevented a

female staff member from closing the door to her office. And from early 1996 through the middle of 1997, defendant asked for Vaseline daily and spent a lot of time in the bathroom, apparently masturbating. Defendant acknowledged this conduct, stopped it when reminded, but usually started again.

More recently, in April 1997, defendant saw scratches on the hand of a male staff member and said, "I thought that your wife had put razor blades in the area of her vagina and that you had cut your hand while feeling her." Walters considered this comment an indication that defendant was having sexual, if not sadistic, thoughts. Defendant's sexual obsessions and staring at female staff had also increased, possibly, Walters opined, in response to anxiety about his being released.

When asked whether defendant posed a substantial danger of harm to others, Walters testified, "Well, he has exhibited physical harm towards others in the past, . . . on more than one occasion. Most of his behavior since the '91 arrest has not caused physical harm to others, but has been either unpleasant or intimidating or hypersexual. [¶] So, I would say that he certainly will continue to exhibit the signs of symptoms of, his sexual deviation if he does not take his medication, or if he has a relapse he will almost certainly exhibit violence toward others." On cross-examination, Walters opined that at that particular moment in the courtroom, defendant did not represent a substantial danger of physical harm to others. Walters also acknowledged that in its last three reports, the ASH treatment team had concluded that defendant did not meet the strict criteria for recommitment. He noted, however, that the team had significant reservations about defendant's lack of treatment for sexual disorders.

Wanda Killion, a licensed clinical social worker and director of the CONREP program, testified that she began to supervise defendant's outpatient treatment in March 1994. Although he followed the rules, he did not engage in treatment, denied his offenses, and denied having psychological problems, all of which, in her opinion, made it difficult to provide effective help.

At CONREP, defendant acted abnormally. For instance, he would stand on his shoes in a bathroom stall facing the door. He would stare vacantly into space. And he made several hundred obscene phone calls. Killion continued to monitor defendant's treatment when he was returned to ASH. She said he appeared to be taking his medication, although he had in the past said he did not want to. Nevertheless, he continued to deny engaging in inappropriate sexual activity and staring at female staff, despite reports to the contrary.

Given defendant's conduct at CONREP and ASH, his denial of sexually related psychological problems, his failure to engage in appropriate treatment, and his apparent inability to reduce inappropriate sexual activity, Killion concluded that defendant's sexual disorders were not in remission. She further opined that defendant could present a danger of physical harm to others if his custodial status were changed. She said her opinion would not change even though the ASH treatment staff did not consider him a danger.

## IV. *Loss of Jurisdiction*

### A. *Summary of the MDPA*

The MDPA mandates involuntary treatment as a condition of parole for offenders who have been convicted of certain enumerated offenses where (1) the offender has a "severe mental disorder" that is not in remission or cannot be kept in remission without treatment;[3] (2) the disorder was a cause of or aggravating factor in the commission of an enumerated offense; (3) the offender has been treated for the disorder for at least 90 days within the year prior to release on parole; and (4) the offender has been found to represent a substantial danger of physical harm to others due to the disorder. (§ 2962, subds. (a).-(d).) Whether these criteria are met is first determined by mental health professionals. (§ 2962, subd. (d).) If they are found to exist, the offender may request a de novo hearing before the Board of Prison Terms. (§ 2966, subd. (a).) If the board also finds that the criteria are met, the offender may request a jury trial in the superior court. (§ 2966, subd. (d).)

If involuntary treatment is imposed as a condition of parole and thereafter the parolee/patient's disorder is put into remission and can be kept in remission, then the Department of Mental Health must discontinue further treatment. (§ 2968.) If, however, it appears that the disorder will not be in remission at the end of the parole period or cannot be kept in remission, the district attorney may file a petition to extend involuntary treatment for an additional one year beyond the parolee/patient's parole release date. (§§ 2970, 2972, subds. (a).-(c).) The petition must specify that (1) the parolee/patient has received continuous treatment, (2) he or she has a severe mental disorder, (3) the disorder is not in remission or cannot be kept in remission without continued treatment, and (4) because of the disorder, the

---

[3] "The term 'severe mental disorder' means an illness or disease or condition that substantially impairs the person's thought, perception of reality, emotional process, or judgment; or which grossly impairs behavior; or that demonstrates evidence of an acute brain syndrome for which prompt remission, in the absence of treatment, is unlikely. The term 'severe mental disorder' as used in this section does not include a personality or adjustment disorder, epilepsy, mental retardation or other developmental disabilities, or addiction to or abuse of intoxicating substances." (§ 2962, subd. (a).)

parolee/patient represents a substantial danger of physical harm to others. (§ 2970.) Among other things, the parolee/patient is entitled to a jury trial on the petition. If the allegations are found to be true, then the court must order commitment for a one-year period. (§ 2972, subd. (c).) Prior to the expiration of this commitment period, the district attorney may file a new petition to recommit the patient for another year. (§ 2972, subd. (e).)

The MDPA sets forth specific procedures and time requirements for extending involuntary treatment. Section 2970 provides, in pertinent part: "Not later than 180 days prior to the termination of parole . . . unless good cause is shown for the reduction of that 180-day period, if the prisoner's severe mental disorder is not in remission or cannot be kept in remission without treatment, the medical director of the state hospital which is treating the parolee . . . shall submit to the district attorney . . . his or her written evaluation on remission. . . . [¶] The district attorney may then file a petition with the superior court for continued involuntary treatment for one year."

Section 2972, subdivision (a) (hereafter section 2972(a)), provides, in pertinent part: "(a) The court shall conduct a hearing on the petition under Section 2970 for continued treatment. . . . [¶] . . . The trial shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown."

## B. *Procedural Background*

In this case, the ASH treatment staff sent reports to the district attorney within 180 days of defendant's scheduled release date of May 18, 1997. On January 25, 1996, Michael Lisiak, M.D., a staff psychiatrist at ASH, prepared a "Discharge Summary" recommending against an extension of defendant's commitment. In an addendum, dated October 10, 1996, Walters reviewed defendant's condition and concurred with Lisiak. On October 18, 1996, Joseph D. Blanton, M.D., acting clinical and medical director of ASH, sent a letter to the Santa Clara County District Attorney, in which he, too, concurred.

On April 30, 1997, 18 days before defendant's release date, the district attorney filed a recommitment petition, alleging, in effect, that defendant had a disorder that rendered him dangerous. On May 7, 1997, the court directed ASH· to produce defendant for a hearing on May 12, 1997. This did not occur, and the court issued a second order for a hearing on May 16, 1997. Apparently, at that time, the petition was scheduled for trial. On May 20,

1997, the parties and court discussed *in limine* motions, instructions, and proposed expert testimony. A jury was also selected. The trial was conducted on May 21 and 22, 1997. Thereafter, the jury found the allegations in the petition true, and the court ordered defendant committed for an additional year. It also rejected his request for outpatient status.

## C. *Failure to Comply with Section 2972(a)*

Clearly, the court failed to comply with the procedural requirements of section 2972(a). Trial did not, and could not, commence at least 30 days before defendant's May 18 release date because the district attorney did not file the petition until April 30. The court did not obtain a waiver of time from defendant; nor did it require the district attorney to demonstrate good cause for the delay or make a finding on the record of good cause. The matter simply proceeded to trial.

Defendant contends that under the circumstances the trial court lacked jurisdiction to conduct a trial and should have dismissed the petition.

The People first claim that the court implicitly found good cause for the delay in commencing trial based on defense counsel's schedule. They note that on May 20, the district attorney commented on the record that trial had been "trailing" because defense counsel has "been out to trial on a prior case . . . ." This claim is unpersuasive.

■ Defense counsel's obligation to *another* client, standing alone, does not constitute good cause to delay defendant's trial. (Cf., e.g., *People v. Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255] [the state cannot rely upon the obligations appointed counsel owes to other clients to excuse its denial of a speedy trial to the instant defendant].) In any event, the trial date was not set until May 16, two days before defendant's release date. Thus, defense counsel's other obligation could only have excused a delay between May 16 and May 20. It does not explain or justify the failure to commence trial by April 18, i.e., 30 days before defendant's release date. Moreover, it is beyond dispute that this failure was due to the fact that the petition was filed fewer than 30 days before defendant's release date.

The People alternatively argue that defendant waived any claims based on the timeliness of the petition or the scheduling, commencement, and completion of trial because he failed to object below. In response, defendant argues that because the parties cannot waive a court's lack of jurisdiction, his failure to object below is irrelevant. (See *Summers* v. *Superior Court* (1959)

53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668] [jurisdiction cannot be conferred by waiver, consent, or estoppel].) ▮ We focus, therefore, on whether the failure to comply with section 2972(a) deprived the trial court of jurisdiction to conduct a trial on the petition.

▮ When courts use the phrase "lack of jurisdiction," they are usually referring to one of two different concepts, although, as one court has observed, the distinction between them is "hazy." (*People v. Mendez* (1991) 234 Cal.App.3d 1773, 1781 [286 Cal.Rptr. 216].) There is "lack of jurisdiction" in its fundamental or strict sense: "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) On the other hand, a court may have jurisdiction in the strict sense but nevertheless lack " 'jurisdiction' (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Ibid.*) When a court fails to conduct itself in the manner prescribed, it is said to have acted in *excess* of jurisdiction. (*Ibid.*; see generally, 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, §§ 10, 276, pp. 555-556, 840-842; 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Jurisdiction and Venue, §§ 1822, 1828, pp. 2159, 2165.)

"The consequences of an act beyond the court's jurisdiction in the fundamental sense differ from the consequences of an act in excess of jurisdiction." (*People v. Ruiz* (1990) 217 Cal.App.3d 574, 584 [265 Cal.Rptr. 886].) As noted, fundamental jurisdiction cannot be conferred by waiver, estoppel, or consent. Rather, an act beyond a court's jurisdiction in the fundamental sense is null and void. Therefore, a claim based on a lack of a fundamental jurisdictional may be raised for the first time on appeal. (*People v. Chadd* (1981) 28 Cal.3d 739, 757 [170 Cal.Rptr. 798, 621 P.2d 837].) "In contrast, an act in excess of jurisdiction is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time. [Citations.]" (*People v. Ruiz, supra*, 217 Cal.App.3d at p. 584; *In re Andres G.* (1998) 64 Cal.App.4th 476, 482 [75 Cal.Rptr.2d 285].)

### 1. *Fundamental Jurisdiction*

▮ To determine whether the failure to comply with section 2972(a) divested the court of fundamental jurisdiction, we must first decide whether the statutory procedures concerning the commencement of trial are mandatory or directory.

▮ In *Morris v. County of Marin* (1977) 18 Cal.3d 901 [136 Cal.Rptr. 251, 559 P.2d 606], the court explained the difference between mandatory

and directory statutory requirements. "[T]he term 'mandatory' refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses. By contrast, the 'directory' or 'mandatory' designation does not refer to whether a particular statutory requirement is 'permissive' or 'obligatory,' but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates." (*Id.* at p. 908.) Thus, a mandatory statute triggers fundamental jurisdiction.

There is no simple test to determine whether a statutory requirement is mandatory or directory. (*Morris v. County of Marin, supra*, 18 Cal.3d at pp. 909-910.) As in all cases of statutory interpretation, the court " 'must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failing to do the particular act at the required time. [Citation.] When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose [citation] . . . .' " (*Id.* at p. 910, fn. omitted.)

■ Concerning statutory *time* limitations in particular, however, our Supreme Court has recognized a general rule that ". . . requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed. [Citations.] In ascertaining probable intent, California courts have expressed a variety of tests. In some cases focus has been directed at the likely consequences of holding a particular time limitation mandatory, in an attempt to ascertain whether those consequences would defeat or promote the purpose of the enactment. [Citations.] Other cases have suggested that a time limitation is deemed merely directory 'unless a consequence or penalty is provided for failure to do the act within the time commanded.' [Citations.]" (*Edwards v. Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365]; accord, *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1145 [43 Cal.Rptr.2d 693, 899 P.2d 79]; see also *People v. McGee* (1977) 19 Cal.3d 948, 958-959 [140 Cal.Rptr. 657, 568 P.2d 382].)

■ Concerning the 30-day trial requirement, we find guidance in this court's recent decision in *People v. Fernandez* (1999) 70 Cal.App.4th 117

[82 Cal.Rptr.2d 469]. There, we held that the 180-day deadline for submission of the medical staff evaluation was directory and not mandatory.[4] We first noted the purpose of the MPDA, as set forth in section 2960: "The Legislature finds that there are prisoners who have a treatable, severe mental disorder that was one of the causes of, or was an aggravating factor in the commission of the crime for which they were incarcerated. Secondly, the Legislature finds that if the severe mental disorders of those prisoners are not in remission or cannot be kept in remission at the time of their parole or upon termination of parole, there is a danger to society, and the state has a compelling interest in protecting the public. Thirdly, the Legislature finds that in order to protect the public from those persons it is necessary to provide mental health treatment until the severe mental disorder which was one of the causes of or was an aggravating factor in the person's prior criminal behavior is in remission and can be kept in remission." (§ 2960.)

Given this purpose, we found that the 180-day deadline is intended "to provide reasonable assurance that recommitment (if appropriate) may be addressed before a prisoner's scheduled release date, so that those mentally disordered prisoners who still pose a danger to others will not be released from custody." (*Fernandez, supra*, 70 Cal.App.4th at p. 129.) We reasoned that to construe the deadline as mandatory would hinder the legislative purpose and could also disserve those prisoners who require treatment. (See *People v. Kirkland, supra*, 24 Cal.App.4th at p. 911 [180-day requirement also "ensures the district attorney adequate time to decide whether to file the petition, file it, and to prepare for trial."].)

We further observed that, in accordance with the general rule noted above, courts have found similar deadlines to be directory. We cited, for example, *People v. Curtis* (1986) 177 Cal.App.3d 982 [223 Cal.Rptr. 397], which involved the 30-day trial deadline for extending commitments for mentally disordered sex offenders (MDSO's). (See Welf. & Inst. Code, former § 6316.2, subd. (d), repealed by Stats. 1981, ch. 928, §§ 3, 4 and 5, pp. 3485-3486.) The *Curtis* court explained that where a statutory requirement is designed to make proceedings orderly, systematic, and speedy and the failure to comply does not injure the interested party, the requirement is generally deemed directory. Conversely, where a requirement is designed to protect an individual and the failure to comply might harm the individual, the requirement is generally mandatory. (177 Cal.App.3d at p. 988.) Turning to the 30-day trial requirement, the *Curtis* court opined that since a person

---

[4]We note that in *People v. Kirkland* (1994) 24 Cal.App.4th 891 [29 Cal.Rptr.2d 863], the court assumed for purposes of argument that the 180-day deadline was jurisdictional. (*Id.* at p. 910.) In *Zachary v. Superior Court* (1997) 57 Cal.App.4th 1026, 1036-1037 [67 Cal.Rptr.2d 532], the court found it unnecessary to determine whether any of the time requirements in the MDPA were jurisdictional.

will be released when the commitment term expires, unless there has been a trial and order extending it, the basic purpose of the requirement is to protect society, i.e., "to provide reasonable assurance trial will be completed and recommitment orders entered in appropriate cases, so that MDSOs who still pose a substantial danger to society will not be released from custody." (*Id.* at p. 989.) This purpose, the court reasoned, would be defeated if the requirement were mandatory. "It would be anomalous to construe a statute designed to prevent the release of dangerous people into the community in such a way that an inconsequential violation of a time requirement would allow the very release the statute is designed to prevent." (*Ibid.*) Thus, the court deemed the deadline directory.

In *Fernandez*, we also cited *People v. Smith* (1990) 224 Cal.App.3d 1389 [274 Cal.Rptr. 591], which involved the deadline for holding a sanity hearing for persons previously found not guilty by reason of insanity (NGI). (§ 1026.2, subd. (e).) The purpose of the deadline, according to the *Smith* court, is to protect society while efforts are made to provide treatment for insane individuals. (224 Cal.App.3d at p. 1394.) The court reasoned that a directory deadline was appropriate because it would mean that even when an order for continued treatment is entered after deadline has passed, it would still be given effect and provide the defendant with the treatment he was found to need. (*Id.* at pp. 1394-1395; cf. also *People v. Mord* (1988) 197 Cal.App.3d 1090, 1116-1117 [243 Cal.Rptr. 403] [180-day deadline for extending NGI commitment in § 1026.5 and annual parole hearings in former § 1611 directory]; *People v. Dougherty* (1983) 143 Cal.App.3d 245, 247 [191 Cal.Rptr. 668] [90- and 30-day deadlines in § 1026.5 directory]; *People v. Echols* (1982) 138 Cal.App.3d 838, 841-842 [188 Cal.Rptr. 328] [same]; *In re Johns* (1981) 119 Cal.App.3d 577, 580 [175 Cal.Rptr. 443] [same].)[5]

Turning to the 30-day trial deadline in section 2972(a), we find that its practical purpose, like that of the 180-day deadline, is to ensure a reasonable

---

[5]We acknowledge that in cases where the time requirements in section 1026.5 were deemed directory, courts relied, in part, on express statutory language that time requirements are not jurisdictional. (§ 1026.5, subd. (a)(2).) However, we do not consider the *lack* of such language in the MDPA conclusive evidence that the Legislature intended the time requirements to be mandatory and jurisdictional.

We further acknowledge that in the NGI context, some courts have said that a trial court lacks jurisdiction to proceed if the petition to extend an NGI commitment is filed after the commitment term has expired. (See, e.g., *People v. Saville* (1982) 138 Cal.App.3d 970, 974 [188 Cal.Rptr. 376]; *People v. Pacini* (1981) 120 Cal.App.3d 877, 889-892 [174 Cal.Rptr. 820]; but see *People v. Minahen* (1986) 179 Cal.App.3d 180, 187-189 [224 Cal.Rptr. 460] [court retains jurisdiction if defendant has not been released and good cause is shown].) These cases are not pertinent because the petition here was filed before defendant's release date arrived.

amount of time in which to conduct a trial before the defendant is due to be released. (*People v. Kirkland, supra,* 24 Cal.App.4th at p. 913; cf. *People v. Hill* (1982) 134 Cal.App.3d 1055, 1057 [185 Cal.Rptr. 64] [construing similar requirement in § 1026.5].) In *People v. Kirkland, supra,* 24 Cal.App.4th 891, the court explained that although the deadline partly benefits the defendant, who "need not remain confined beyond the release date pending the end of trial[,]" it also "benefits the public: trial can be completed before a severely mentally disordered prisoner who poses a substantial danger of physical harm to others must be released." (*Id.* at p. 913.) As did the courts in *Curtis* and *Smith,* we conclude that the deadline is primarily designed to serve the interests of the *public,* rather than the MDO, by providing reasonable assurance that an MDO who has been receiving treatment for a severe mental disorder will not be released unless and until a determination is made that he or she does not pose a substantial danger to others.

Next, we note that the lack of a penalty or consequence for noncompliance with a statutory procedure is indicative of a directory requirement. (*San Mateo County Coastal Landowners' Assn. v. County of San Mateo* (1995) 38 Cal.App.4th 523, 544 [45 Cal.Rptr.2d 117].) Section 2972(a) does not provide that, in the absence of waiver or good cause, a trial commenced fewer than 30 days before a release date is invalid. Nor does the statute prescribe a sanction or other consequence for commencing a trial in such circumstances. (Cf. *Conservatorship of James M.* (1994) 30 Cal.App.4th 293, 298 [35 Cal.Rptr.2d 567] [lack of penalty suggests 10-day trial requirement in Welf. & Inst. Code, § 5350, subd. (d) is directory]; *Spitze v. Zolin* (1996) 48 Cal.App.4th 1920, 1927 [56 Cal.Rptr.2d 573] [same re deadline for filing blood test under Veh. Code, § 23157, subd. (g); *California Correctional Peace Officers Assn. v. State Personnel Bd., supra,* 10 Cal.4th at p. 1146 [notwithstanding statutory consequence for failure to render decision within time period, Gov. Code, § 18671.1 directory].)

Last, we observe that if the 30-day deadline were mandatory, then the failure to comply would, in effect, automatically terminate an MDO's involuntary treatment, regardless of need, and require his or her release, regardless of the potential danger to others. Such a result is inconsistent with the purpose of the MDPA and elevates the secondary benefit of the deadline to an MDO over the fundamental purpose of the MPDA: to protect the public.

In sum, the general rule concerning statutory time requirements, the cases cited above, and our discussion of section 2972(a) lead us to conclude that the 30-day deadline is directory and not mandatory.

■    Defendant alternatively claims that the trial court lost jurisdiction over the matter on May 18, 1997, when his parole term expired. This claim implies that a scheduled release date constitutes a mandatory deadline by which time the trial must be completed.

Again, we look first to the statutory language to determine whether the Legislature intended to establish such a jurisdictional deadline.

As noted, section 2972(a) provides, in relevant part, "The trial shall commence no later than 30 calendar days prior to [the release date], unless the time is waived by the person or unless good cause is shown." This language contemplates a trial at least 30 days before the release date, presumably because, under normal circumstances, a trial would take no longer than 30 days. However, the statute does not expressly set any deadline for completion of a trial, even if it begins more than 30 days before a release date. Nor does it limit continuances or otherwise prohibit a court from extending a trial beyond the release date if necessary. We further note that the waiver/good cause exception to the 30-day requirement does not expressly limit the amount of time an MDO may waive or that a court may excuse for good cause. And, under the exception, the statute does not expressly set any deadline for commencement or completion of a trial or prohibit either from occurring after an MDO's release date.

In contrast to section 2972(a) is section 2972, subdivision (e). This subdivision establishes a deadline based on the MDO's release date, providing, "*Prior to the termination of a commitment* under this section, a petition for recommitment may be filed . . . ." (*Ibid*; italics added.) The difference in these subdivisions indicates to us that when the Legislature intends to prescribe a trial commencement deadline or make the scheduled release date a deadline, it does so expressly and not by implication.

Moreover, the purpose of the MDPA in general and section 2972(a) in particular does not reveal a legislative intent to make the release date a mandatory deadline. Consider the following hypothetical situation. Fewer than 30 days before his scheduled release date, an MDO's mental condition unexpectedly deteriorates. Medical authorities consider the MDO a substantial danger if released and immediately submit an evaluation recommending recommitment. One week before the release date, the district attorney files a petition, and the court finds good cause to excuse noncompliance with the 180- and 30-day requirements.

The fixed jurisdictional deadline urged by defendant completely ignores the practical obstacles that could make it unreasonable, if not impossible, to

complete the trial within the remaining week. Indeed, the court would be powerless to conduct proceedings beyond the release date even if, for example, prosecution or defense witnesses, counsel for the parties, jurors selected to hear the case, or the MDO became temporarily unavailable. Moreover, the court could not delay proceedings even if the MDO wanted to waive time, consent to a later trial date, or continue the proceedings. The People further argue, persuasively, that if the release date were jurisdictional, an MDO might try to slow down or delay the progress of a trial until his release date. Then, if it became apparent that trial could not be completed by the deadline, the court would have to grant a motion to dismiss the petition, terminate the proceedings, and direct the MDO's release, regardless of the circumstances that prevented completion before the deadline and, more importantly, regardless of whether the MDO poses a danger to others and needs further treatment.

In our view, such a result would defeat the purpose of the MDPA and section 2972(a). Indeed, given such potentially far-reaching and significant consequences, we consider it highly unlikely the Legislature elected to establish a mandatory jurisdictional deadline by implication in section 2972(a). Moreover, we consider a jurisdictional deadline to be inconsistent with the general waiver/good cause exception to the 30-day requirement, which is designed to give courts the flexibility to respond to circumstances that make it impossible to follow the normal commitment procedures.

We find support for our analysis in *People v. Minahen, supra,* 179 Cal.App.3d 180. That case involved an identical 30-day trial deadline in section 1026.5, which, as noted, provides for NGI recommitments.[6] There, the Board of Prison Terms (BPT) undercalculated the defendant's custody credit and as a result erroneously scheduled his release date one year later than it should have been. A recommitment trial was commenced within the 30-day deadline using the erroneous release date, and the defendant was ultimately recommitted. In fact, however, the defendant should have been released almost a year *before* the trial commenced. (179 Cal.App.3d at pp. 184-185.)

On appeal, the defendant claimed a commitment term is jurisdictional, and, therefore, the court had no power to hold an extension hearing after that term had expired. (*People v. Minahen, supra,* 179 Cal.App.3d at p. 185.) The court disagreed. It explained, "A court's power to render a judgment, absent

---

[6]When *Minahen* was decided, section 1026.5, subdivision (b)(4), provided, in relevant part, "The trial [on a recommitment petition] shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless that time is waived by the person or unless good cause is shown."

a defendant's concession of jurisdiction, requires procedural due process, i.e., that the person whose rights are to be adjudicated be given adequate notice so that he can exercise his right to be heard. [Citation.] There is no question but that appellant was given adequate notice and full opportunity to be heard on the extension petition." (*Id.* at p. 186.) Noting that the express procedural deadlines in the statute are not jurisdictional and "were designed primarily to benefit the public and not the individual defendant" (*id.* at p. 189), the court opined, "[W]e perceive no reason why an extension petition cannot be filed and considered after the original commitment term has expired upon a showing of good cause as to why the petition was not timely filed and assuming the defendant is afforded procedural due process."[7] (*Ibid.*, fn. omitted; accord, *People v. McCune* (1995) 37 Cal.App.4th 686, 691 [43 Cal.Rptr.2d 804]; *People v. Mord, supra,* 197 Cal.App.3d at p. 1110; see *Garcetti v. Superior Court* (1998) 68 Cal.App.4th 1105 [80 Cal.Rptr.2d 724] [citing *Minahen*]; *People v. Dias* (1985) 170 Cal.App.3d 756, 762-763 [216 Cal.Rptr. 295] ["[A]n order for extended [MDSO] commitment will be valid even though the petition was filed after expiration of the commitment if, as a result of legislative or judicial change, the term expired without a reasonable opportunity to prepare and file the petition."].)

Here, we conclude that neither the language of section 2972(a) nor the purpose of that section and the MDPA in general reveals a legislative intent to make the release date a mandatory jurisdictional deadline. Indeed, we do not find the statute reasonably susceptible of that construction. Moreover, where, as in section 2972(a), the Legislature has not prescribed a release-date deadline prescribed elsewhere in the MPDA, we consider it inappropriate, if not improper, to impose one judicially under the guise of statutory interpretation. (See Code Civ. Proc., § 1858; *Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998 [275 Cal.Rptr. 201, 800 P.2d 557]; *People v. One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475 [224 P.2d 677]; see also *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [45 Cal.Rptr.2d 279, 902 P.2d 297].)

To support his claim, defendant relies primarily on *Zachary v. Superior Court, supra,* 57 Cal.App.4th 1026. In *Zachary,* the district attorney filed a petition 24 days after the defendant's commitment term expired. Before trial, defendant moved to dismiss the petition, claiming it was untimely and denied him due process and that the People had not shown good cause to excuse a delay in commencing trial. Although the district attorney conceded negligence in filing the petition, the trial court denied the motion, finding

---

[7] In the footnote, the court qualified its position, saying that a court would lack the power to proceed if the *petition* were filed after the defendant has been released. (*People v. Minahen, supra,* 179 Cal.App.3d at p. 189, fn. 2.)

that the potential danger to society outweighed any prejudice to the defendant. The defendant then sought a writ of mandate to prevent trial from proceeding, and the Third District Court of Appeal issued it, directing the trial court to dismiss the petition. (*Id.* at pp. 1029-1030.) The court explained that although the MDPA does not specify how many days before a release date the petition must be filed, section 2972, subdivision (e), expressly requires that it be filed *before* the commitment term (or parole term) has expired. Moreover, the court noted that the waiver/good cause exception in section 2972(a) does not apply to the deadline in subdivision (d). In addition, the court emphasized that the MDPA authorizes commitments "in expressly limited and defined increments, i.e., 'for a period of one year from the date of termination of parole or a previous commitment.' (§ 2972, subd. (c).)" (57 Cal.App.4th at p. 1032.)

The plain language of section 2972, subdivision (e), together with other provisions, reflects a legislative intent to prohibit the filing of a petition, and the initiation of commitment proceedings, *after* a parole period or previous commitment has expired. In our view, therefore, the petition in *Zachary* was not only untimely but unauthorized, and the trial court erred as a matter of law in denying the pretrial motion to dismiss the petition.

In *Zachary,* however, the Third District employed a constitutional analysis to reach its conclusion. Viewing the MDPA as a whole, the court believed the Legislature intended for the petition to be filed not only before the release date but also "sufficiently in advance of the release date to guarantee the completion of trial on the petition before the discharge of parole or other scheduled release date." (*Zachary v. Superior Court, supra,* 57 Cal.App.4th at p. 1031.) According to the court, this "guarantee" incorporated principles of procedural due process, which, the court explained, require notice and a hearing *before* the state may involuntarily commit a person and thereby interfere with his or her interest in liberty. (*Id.* at pp. 1031-1032, citing *Vitek v. Jones* (1980) 445 U.S. 480 [100 S.Ct. 1254, 63 L.Ed.2d 552].) In support of its analysis, the court cited a line of NGI cases for the proposition that a petition filed too close to an expiration date must be dismissed if the prejudice (e.g., inadequate time to prepare for trial) outweighs the justification for the delay. (*Zachary v. Superior Court, supra,* 57 Cal.App.4th at pp. 1034-1035, citing *In re Johns, supra,* 119 Cal.App.3d 577; *People v. Dougherty, supra,* 143 Cal.App.3d 245, 248-249; *People v. Hawkins* (1983) 139 Cal.App.3d 984 [189 Cal.Rptr. 126]; *People v. Hill, supra,* 134 Cal.App.3d 1055; *People v. Echols, supra,* 138 Cal.App.3d 838.)

Applying this balancing test, the *Zachary* court observed that since the petition was filed after the release date, it was impossible for the defendant

to prepare for a trial before that date. Moreover, the defendant was confined after his release date, both before and after the petition was filed. On the other hand, the court found that the People had not provided any excuse or justification for the delay. Under the circumstances, prejudice prevailed, and, the court concluded, the defendant's motion to dismiss the petition should have been granted. (*Zachary v. Superior Court, supra,* 57 Cal.App.4th at p. 1036.)

As noted, we agree with the result in *Zachary.* However, given our analysis of section 2972(a) and overall purpose of the MDPA, we question the *Zachary* court's view that the Legislature intended to "guarantee" the completion of trial before expiration of a previous commitment term.[8] We also question the court's suggestion that a showing of excuse or justification by the prosecution would have made a difference. As noted, the MDPA does not provide a "good cause" exception to section 2972, subdivision (e). Finally, and notwithstanding the court's view of legislative intent, *Zachary* does not suggest that the release date is a *mandatory* jurisdictional deadline. Indeed, the court expressly declined to address this jurisdictional issue. (57 Cal.App.4th at pp. 1036-1037.)

We acknowledge that even when a petition is filed before a scheduled release date, a defendant is entitled to adequate time to prepare for a trial before the state interferes with his or her liberty. Moreover, to maintain custody after a release date and pending a final determination on a petition obviously interferes with an MDO's liberty interests. Nevertheless, we do not consider it necessary to create a jurisdictional deadline to protect an MDO's rights and interests. First, although constitutional rights may be fundamental, they can be waived or forfeited by the failure to assert them in a timely manner. (See *Yakus v. United States* (1944) 321 U.S. 414, 444 [64 S.Ct. 660, 677, 88 L.Ed. 834]; *In re Horton* (1991) 54 Cal.3d 82, 95-96 [284 Cal.Rptr. 305, 813 P.2d 1335].) However, since jurisdiction cannot be conferred by waiver, a jurisdictional deadline would, in our view, provide more protection than necessary.

Even without a waiver, the state may restrain a person if it adequately protects against the mistaken or unjustified interference with liberty. This ordinarily means some sort of notice and a hearing before the interest is affected. (See *Zinermon v. Burch* (1990) 494 U.S. 113, 127-128 [110 S.Ct. 975, 984-985, 108 L.Ed.2d 100]; *Carey v. Piphus* (1978) 435 U.S. 247, 259

---

[8]It is interesting to note that in *People v. Fernandez, supra,* 70 Cal.App.4th 117, and *People v. McCune, supra,* 37 Cal.App.4th 686, the commitment trials continued after the defendants' release dates. However, in these cases, the defendants did not raise a jurisdictional claim based on the release date.

[98 S.Ct. 1042, 1050, 55 L.Ed.2d 252]; *Goss v. Lopez* (1975) 419 U.S. 565, 579 [95 S.Ct. 729, 738-739, 42 L.Ed.2d 725].) Again, we do not find a jurisdictional deadline essential to ensure that a hearing is held or to provide adequate time to prepare for it.

For example, if in our hypothetical it became clear that it was impossible to complete trial before a release date and the defendant did not waive time, we believe the trial court could provide adequate time to prepare for trial and properly maintain the custodial status quo pending the trial. If, at the hearing to determine good cause to excuse noncompliance with the 30-day requirement, the parties addressed and the court determined whether there was probable cause to believe the MDO, as a result of a mental disorder, posed a danger to others if released on schedule and before a final determination of the petition. (Cf. Welf. & Inst. Code, § 5150 [involuntary detention for 72-hour period of evaluation authorized on finding of probable cause that person is dangerous to others or gravely disabled]; *id.*; § 6602 [custody pending trial authorized on finding of probable cause to believe person is likely to engage in sexually violent predatory criminal behavior upon his or her release]; *id.*; § 6601.5 [custody pending probable cause determination under § 6602 authorized on finding that petition alleges facts that, if true, could support finding of probable cause].) In this way, the court could retain the flexibility to accommodate unforeseen circumstances, achieve the purposes of the MDPA, and also protect a defendant's rights to liberty and procedural due process. A jurisdictional deadline, on the other hand, would blindly protect liberty interests, possibly at the expense of public safety.[9]

Defendant argues that the expiration of the commitment term is like the expiration of a statute of limitations and thus should be treated as a jurisdictional bar to further proceedings. This argument misses the mark.

Although the MDPA is in the Penal Code and makes some rules of criminal procedure applicable to commitment trials, an MDO commitment is nevertheless a civil, not penal, proceeding. (§ 2972(a);[10] see *People v. Robinson* (1998) 63 Cal.App.4th 348, 350-352 [74 Cal.Rptr.2d 52]; *People v. Merfeld* (1997) 57 Cal.App.4th 1440, 1444-1446 [67 Cal.Rptr.2d 759]; *People v. Superior Court (Myers)* (1996) 50 Cal.App.4th 826, 834 [58 Cal.Rptr.2d 32]; § 2966, subds. (a) and (b).) In civil cases, the statute of limitations is not jurisdictional but merely serves a procedural function and

---

[9]We do not construe the MDPA to require such a determination. Rather, our example is intended only to explain why we do not find a jurisdictional deadline necessary to protect an MDO's interests in liberty and procedural due process.

[10]The MDO has the right to appointed counsel and a jury trial. The rules of both civil and criminal discovery apply. The district attorney must prove the allegations in the petition beyond a reasonable doubt, and the jury's verdict must be unanimous. (§ 2972(a).)

constitutes an affirmative defense that is waived unless pleaded and proved. (See *People v. McGee* (1934) 1 Cal.2d 611, 613 [36 P.2d 378]; *Minton v. Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473]; *Nelson v. Flintkote Co.* (1985) 172 Cal.App.3d 727, 733 [218 Cal.Rptr. 562]; 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 308, p. 337; *id.*, § 314, p. 345; 5 Witkin, Cal. Procedure, *supra*, Pleading, § 1039, pp. 453-455.)

In criminal cases, on the other hand, the statute of limitations is not invariably jurisdictional in the fundamental sense. (See *Cowan v. Superior Court* (1996) 14 Cal.4th 367, 373-374 [58 Cal.Rptr.2d 458, 926 P.2d 438].) In any event, it is the prosecution in general, not the *trial,* that must commence before the limitations period expires. For this purpose, a prosecution commences upon the filing of a charging document or even the issuance of an arrest warrant. (See § 804; *People v. McGee, supra,* 1 Cal.2d 611; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Defenses, § 372, p. 426-427, and cases cited there.) Thus, even assuming, for purposes of argument only, that a commitment hearing is criminal in nature, the petition in this case was filed, and the commitment proceedings commenced, before defendant's scheduled release date.

Defendant also argues that when his scheduled release date passed, the court automatically lost personal jurisdiction over him. We disagree.

In civil matters, a court has personal jurisdiction over a party, even when the party is before the court by unlawful force, duress, or fraud. Under such circumstances, however, the court may decline to exercise its jurisdiction. (See discussion and cases cited in 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, §§ 124-127, pp. 665-671.)

We further note that until May 18, 1997, defendant was in the custody of ASH as a condition of parole pursuant to section 2964. After that date, he remained in custody pending the outcome of the commitment trial. Although his continued custody during the trial was not based on a currently applicable commitment order, he did not seek immediate release on that ground. Nor does he cite authority for the proposition that personal jurisdiction over him hinged on the lawfulness of his custodial status at the time of the trial. In this regard, we note that in recent cases involving the extension of commitments for sexually violent predators (see Welf. & Inst. Code, § 6600 et seq.), courts have held that the unlawfulness of the defendant's custodial status did not divest the trial court of jurisdiction to proceed on a petition for recommitment. (*People v. Superior Court (Whitley)* (1999) 68 Cal.App.4th

1383, 1390 [81 Cal.Rptr.2d 189]; *Garcetti v. Superior Court, supra,* 68 Cal.App.4th 1105, 1114-1118.)[11]

## 2. *Waiver*

█ Having concluded that the 30-day trial requirement is not jurisdictional in the fundamental sense, we next focus on whether defendant's failure to object to the trial date waived any claim based on noncompliance with section 2972(a).

As noted, an act in excess of jurisdiction "is valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time. [Citations.]" (*People v. Ruiz, supra,* 217 Cal.App.3d at p. 584; *People v. Burnett* (1999) 71 Cal.App.4th 151, 179 [83 Cal.Rptr.2d 629].)

In *People v. Kirkland, supra,* 24 Cal.App.4th 891, the defendant complained that the court had commenced trial fewer than 30 days before the scheduled release date without finding good cause to excuse the delay. (*Id.* at p. 913.) Citing *People v. Wilson* (1963) 60 Cal.2d 139 [32 Cal.Rptr. 44, 383 P.2d 452], the court, in dicta, stated that the defendant "arguably" waived the claim by failing to object before trial. However, because neither party raised or briefed the issue on appeal, the court declined to discuss it further. (*People v. Kirkland, supra,* 24 Cal.App.4th at p. 913, fn. 10.)

*People v. Wilson, supra,* 60 Cal.2d 139, involved the right to a speedy trial. (See U.S. Const., 6th Amend.; Cal. Const., art. I, § 13; § 1382.) As the court explained, this right protects an accused from having criminal charges pending for an undue length of time, prevents oppressive pretrial incarceration, minimizes the accused's anxiety and concern, and limits the potential impairment of defenses. (60 Cal.2d at p. 148; *People v. Egbert* (1997) 59 Cal.App.4th 503, 509 [68 Cal.Rptr.2d 913].) Section 1382, which supplements the basic constitutional right, establishes a protective procedure. It provides that a court "shall order the action to be dismissed" where, among other things, the defendant is not brought to trial within 60 days after indictment or information, unless good cause is shown or the defendant

---

[11]Included in defendant's jurisdictional claim is a complaint that the petition was defective because it was not supported by an "expert" declaration. This claim is meritless. First, the statute does not require that a petition be supported by the declaration of an expert. Defendant waived the alleged defect by failing to object to the petition. (Cf. *People v. Jennings* (1991) 53 Cal.3d 334 [279 Cal.Rptr. 780, 807 P.2d 1009] [failure to demur waives defect in accusatory pleading]; *People v. Equarte* (1986) 42 Cal.3d 456 [229 Cal.Rptr. 116, 722 P.2d 890] [same].) And, in any event, the alleged defect would not, in our view, deprive the court of jurisdiction to proceed.

waives time or consents to trial at a later date. (§ 1382, subd. (a).) However, notwithstanding this mandatory language, courts do not have a sua sponte duty to dismiss an action. (*Ex parte Apakean* (1923) 63 Cal.App. 438, 440 [218 P. 767].) Rather, according to *Wilson,* consent to a trial beyond the prescribed time limit will be presumed where a defendant fails to take the necessary procedural steps of making a timely objection and thereafter moving to dismiss the action *before* trial commences. (*People v. Wilson, supra,* 60 Cal.2d at p. 146; see *Ex Parte Fennessy* (1880) 54 Cal. 101; cf. *In re La Croix* (1974) 12 Cal.3d 146 [115 Cal.Rptr. 344, 524 P.2d 816] [same rule applicable parole revocation hearings].) Consequently, a violation of section 1382 may not be raised for the first time either on appeal or in a posttrial petition for writ of habeas corpus if the defendant, who was represented by counsel, failed to object to the trial date and make a timely motion to dismiss after the applicable period expired. As the *Wilson* court explained, requiring an objection and motion to dismiss prevents a defendant from sitting idly before and during trial and then raising a complaint after being convicted. On the other hand, requiring a timely objection and motion to dismiss is consistent with the general requirement that defendants raise in a timely manner issues that might obviate the need for a trial. (*People* v. *Wilson, supra,* 60 Cal.2d at pp. 146-148; *In re Smiley* (1967) 66 Cal.2d 606, 631 [58 Cal.Rptr. 579, 427 P.2d 179]; see *People v. Saunders* (1993) 5 Cal.4th 580, 589-590 [20 Cal.Rptr.2d 638, 853 P.2d 1093] [reiterating the general rule].)

We find no meaningful basis to distinguish an alleged violation of section 2972(a) from a violation of section 1382. The deadlines prescribed in both statutes relate to the time within which trial must be commenced. Both statutes provide that the period may be waived or excused for good cause. And when a violation of either statute has allegedly occurred, a pretrial objection and motion to dismiss permits the trial court to make a timely determination, which in turn may obviate the need for a trial.

We acknowledge that that the objection/waiver rule is generally not applied when the alleged error involves a pure question of law, which can be resolved on appeal without reference to a record developed below. (See *People v. Welch* (1993) 5 Cal.4th 228, 235 [19 Cal.Rptr.2d 520, 851 P.2d 802], and cases cited there.) Conversely, when the alleged error involves the exercise of trial court's discretion based on factual findings and the particular circumstances of a case, the waiver rule is applied because it serves an essential function: It encourages the parties to present all relevant evidence so the court can resolve factual disputes upon which the ruling must be based, and permits the court to develop a complete record for review. (*Ibid.*; *People v. Franco* (1993) 19 Cal.App.4th 175, 183, fn. 16 [23 Cal.Rptr.2d 475]; *People v. Zito* (1992) 8 Cal.App.4th 736, 742 [10 Cal.Rptr.2d 491].)

Here, the issue of good cause to excuse noncompliance with the 30-day requirement necessarily involves the presentation of evidence and resolution of factual matters rather than a pure question of law. Thus, we consider it proper and appropriate to apply the objection/waiver rule in this context. Consequently, we conclude that by not making a proper objection and motion to dismiss before trial, defendant waived any claim based on a failure to comply with section 2972(a).[12]

### D. Ineffective Assistance of Counsel

Defendant claims that if the failure to object waived his claim on appeal, then defense counsel failed to provide effective assistance of counsel. He argues that because there is no evidence to support a finding of good cause, the trial court would have granted a motion to dismiss had one been made.

■ To prevail on a claim of ineffective assistance of counsel, defendant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice. [Citation.] Tactical errors are generally not deemed reversible, and counsel's decision-making must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation . . . .' [Citation.] Finally, prejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Citations.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 333 [75 Cal.Rptr.2d 412, 956 P.2d 374]; *Strickland v. Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 2064, 80 L.Ed.2d 674].)

Here, the record sheds no light on why defense counsel did not object and seek dismissal when the court set the matter for trial. Nor does the record compel us to deem counsel's omission to be ineffective assistance as a matter of law. Contrary to defendant's claim, the record before us does not conclusively establish a lack of good cause to excuse the delay in commencing trial. Indeed, because there was no objection or hearing, the prosecutor did not present any evidence on the issue. Thus, although the record before us may not reveal good cause, we decline to assume that the prosecutor

---

[12]In light of our discussion, we also reject defendant's claim that he had no obligation to object below and that the trial court had a sua sponte duty to dismiss the claim even in the absence of an objection.

could not have made a sufficient showing or that the court would have granted a motion to dismiss had one been brought. Simply put, the record is not sufficiently developed to resolve the determinative issues: whether defense counsel's conduct was unreasonable and, if so, whether it was prejudicial. Under the circumstances, the appropriate vehicle for raising this claim is a petition for writ of habeas corpus.[13] (See *People* v. *Pope* (1979) 23 Cal.3d 412, 426 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].)

## V.-VIII.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## IX.  *Disposition*

The May 22, 1997, order of commitment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.

A petition for a rehearing was denied January 7, 2000, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 22, 2000.

---

[13]We also consider a writ the appropriate vehicle for the relief defendant seeks in this appeal. As noted, the validity of any subsequent commitment orders is not properly before us. (See fn. 2, *ante*, p. 441.) However, their validity could be challenged in a writ proceeding.

*See footnote, *ante*, page 436.