Filed 2/28/14  P. v. Prideaux CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHERRY PRIDEAUX,<br><br>    Defendant and Appellant. | H039263<br>(Santa Clara County<br>Super. Ct. Nos. CC771044, CC771713,<br>CC786276, CC937648) |

This is an appeal from a trial court order authorizing the involuntary treatment of Sherry Prideaux (appellant) with antipsychotic medications pursuant to Penal Code section 1370, subdivision (a)(2)(B)(i)(I).  Appellant contends that the trial court abused its discretion in denying her request for a continuance of the hearing that was set to determine her capacity to make decisions regarding the administration of medications (hereafter capacity hearing); that her due process rights were violated by the trial court when the court gave the Department of State Hospitals the authority to involuntarily medicate her without the consent of her conservator; and finally that she was deprived of the effective assistance of counsel by her counsel's failure to object to the unnecessary capacity hearing and subsequent order.  For reasons that follow, we affirm the trial court's order.

*Facts and Proceedings Below*

The facts underlying the various crimes with which appellant was charged are not relevant to this appeal. We will, however, set forth in detail the procedural history of this case and the circumstances surrounding appellant's capacity hearing and testimony adduced at that hearing.

On July 10, 2007, the Santa Clara County District Attorney charged appellant with possession of a controlled substance (cocaine) (Health & Saf. Code, § 11350, subd. (a), count one) and two misdemeanors—using or being under the influence of a controlled substance (cocaine) (Health & Saf. Code, § 11550, subd. (a), count two) and possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, count three). Subsequently, on November 9, 2007, appellant was charged again with one count of being under the influence of a controlled substance (cocaine). (Health & Saf. Code, § 11550, subd. (a).) On March 17, 2009, the Santa Clara County District Attorney charged appellant with possession of a controlled substance (cocaine) (Health & Saf. Code, § 11350, subd. (a), count one), possession of controlled substance paraphernalia (Health & Saf. Code, § 11364, count two) and providing a false name to a peace officer (Pen. Code, § 148.9, count three).

Thereafter, on September 15, 2009, the trial court struck the charge of providing a false name to a peace officer; the court placed appellant on Proposition 36 probation. On March 4, 2010, the court extended appellant's probation. However, on August 20, 2010, the court revoked appellant's probation. On January 2, 2011, the court reinstated, modified and extended appellant's probation through June 30, 2011. On September 11, 2012, the court found appellant had violated her probation by using drugs.[1] At this hearing, defense counsel declared a doubt as to appellant's competence to stand trial. Accordingly, pursuant to Penal Code section 1368, the court suspended criminal

---

[1] Appellant had a positive drug test in February 2011.

2

proceedings. On October 17, 2012, based on Dr. Berke's report, the court found that appellant was not competent to stand trial and referred the matter to the South Bay Conditional Release Program (CONREP) for a recommendation on appellant's placement. On October 24, 2012, CONREP recommended that appellant be hospitalized pursuant to Penal Code section 1370, subdivision (a)(2). On October 31, 2012, the court appointed Dr. Hughey to evaluate appellant's capacity to make decisions regarding her medications. On November 19, 2012, Dr. Hughey filed his report. Among other things, Dr. Hughey concluded that appellant did not have the capacity to make decisions regarding her antipsychotic medications. On November 20, 2012, the court set December 7, 2012, for a capacity hearing. That hearing was continued to January 4, 2013. On January 4, 2013, after Dr. Hughey testified to his findings regarding appellant's capacity to make decisions regarding her medications, the court found that appellant lacked "the capacity to consent to the administration of antipsychotic medications . . . ."[2] Accordingly, in a written order filed on January 4, 2013, the court ordered that appellant be committed to the Department of State Hospitals for placement in a locked psychiatric facility. Further, the court ordered that appellant "may be involuntary administered antipsychotic medication by the Department of State Hospitals in the dosage and frequency deemed necessary by the treatment staff when and as prescribed by [appellant]'s treating psychiatrist of the Department of State Hospitals."

Appellant filed a timely notice of appeal.

---

[2]  Dr. Hughey testified that pursuant to his interview/evaluation of appellant on November 8, 2012, and his review of the police records in the case as well as his review of Dr. Berke's evaluation of appellant's competence to stand trial, he had concluded that appellant suffers from schizophrenia and schizoaffective disorder. He opined that appellant lacked the capacity to make medical decisions for herself. He explained that not only was her judgment impaired, but she was not a "reliable historian"; in other words she could not provide a reliable history of her illness and the medications she was taking and why she was taking them. In relevant part, appellant testified that she would "probably" continue to take her medications. We note for the record that appellant's testimony was incomprehensible at times.

3

*Discussion*

*Denial of Appellant's Continuance Motion*

At the January 4, 2012, capacity hearing defense counsel requested a continuance. Counsel argued that based on her interaction with appellant she believed "a second independent medical opinion by a defense potential expert" was warranted. Counsel explained that she had been working with a doctor "as a potential expert" for several weeks, but the doctor had been on vacation and was "unable to do a visit with Ms. Prideaux." Further, counsel stated that she had been out of the office with the flu during the same period. The trial court denied the request for a continuance; the court noted "parenthetically that [appellant] was found not competent by stipulation of counsel on October 17, 2012. The matter was subsequently set for a capacity hearing only. It was well over - - well, nearly a month ago, been set the whole time for that purpose. So the request to continue is denied."

Appellant contends that the trial court's denial of her request for a continuance to procure the services of an expert witness was an abuse of discretion and violated her federal due process right to present a complete defense. Respectfully, we disagree.

A continuance "shall be granted only upon a showing of good cause." (Pen. Code, 1050, subd. (e).) Further, a trial court has broad discretion in determining whether good cause exists for a continuance. (*People v. Riggs* (2008) 44 Cal.4th 248, 296.) An important factor for a trial court to consider in ruling on a motion for a continuance is whether the continuance would be useful. (*People v. Beeler* (1995) 9 Cal.4th 953, 1003 (*Beeler*), abrogated on other grounds as recognized in *People v. Pearson* (2013) 56 Cal.4th 393, 462.) "[T]o demonstrate the usefulness of a continuance[,] a party must show both the materiality of the evidence necessitating the continuance and that such evidence could be obtained within a reasonable time." (*Beeler*, *supra*, 9 Cal.4th at p. 1003.) Appellant has the burden of establishing an abuse of judicial discretion. (*Beeler, supra,* 9 Cal.4th at p. 1003; *People v. Rhines* (1982) 131 Cal.App.3d 498, 506.)

4

In reviewing claims of error based on a trial court's alleged failure to afford the defendant an adequate opportunity to investigate a potential defense, appellate courts have required reasonable assurances that the defense would have been a fruitful area for investigation. For example, in *Beeler*, *supra*, 9 Cal.4th 953, defense counsel requested a continuance during trial to investigate newly discovered evidence that the defendant might have organic brain damage. The Supreme Court held it was not an abuse of discretion to deny the continuance. (*Id.* at p. 1003.)

Initially, the *Beeler* court noted that the defense had not shown unequivocally that the potential defense likely had merit. Rather, defense counsel merely stated that the brain damage evidence *appeared* relevant and *suggested* problems with the defendant's mental state. Although the defense psychologists had testified that the defendant suffered from events of memory loss or unawareness of what he was doing, they did not testify they suspected any organic brain damage. Second, the *Beeler* court noted, there was no adequate showing that the evidence, even if material, could be obtained within a reasonable time. (*Beeler, supra,* 9 Cal.4th 953 at pp. 1003-1004, 1007.)

In *People v. Pride* (1992) 3 Cal.4th 195 (*Pride*), the defense sought a continuance of the penalty phase of the trial to determine whether it could present a psychiatric defense. Defense counsel presented a letter from a defense psychiatrist stating that he perceived hostile and paranoid tendencies in the defendant and suspected he was withholding critical information about his childhood. (*Id*. at p. 254.)

Similar to the *Beeler* court, the Supreme Court in *Pride* held the denial of a continuance was not an abuse of discretion. (*Pride, supra,* 3 Cal.4th at p. 254.) The court noted there was no assurance that an investigation would even be fruitful, since the defense psychiatrist believed it might not be possible to establish the necessary rapport with the defendant. (*Id.* at pp. 254-255.)

Here, we are faced with circumstances similar to those in *Beeler* and *Pride.* Counsel's request to the court was all the court had before it, and counsel's basis for

requesting a continuance was at best equivocal. As noted, counsel told the court that she was working with "a *potential* expert" (italics added) and she "believe[d]" that "a second independent medical opinion by a defense potential expert" was warranted. Any need for a continuance was entirely speculative. Given Dr. Hughey's report, which the court had before it, indicating that appellant is "gravely disabled," psychotic and unable to appreciate the different medications she was taking and the fact that appellant has been subject to a conservatorship for many years,[3] we have serious doubts as to whether the additional time requested would have yielded meaningful evidence, other than to confirm Dr. Hughey's conclusions. In sum, there are substantial reasons to doubt that any witnesses would produce the evidence favorable to appellant that her counsel believed was warranted. Counsel failed to establish on the record that a further continuance would have been useful. Speculative need does not establish good cause for a continuance. (*Beeler*, *supra*, 9 Cal.4th at p. 1004.)

Accordingly, we hold that appellant has failed to show the trial court abused its discretion when it denied her motion for a continuance.

Finally, we reject appellant's claim that her federal due process rights were violated by the trial court's denial of her continuance motion.

---

[3] The record contains a letter dated January 2, 2008, from the Santa Clara County Department of Aging and Adult Services, Officer of the Public Administrator/Guardian/Conservator to Judge Manley that shows that appellant "ha[d] been permanently conserved and ha[d] been placed in different mental health facilities since 2000." The letter goes on to note that appellant had lived in the community, but has been in and out of jail at least three times as well as in a psychiatric hospital. "The caretakers reported that she has been restless, in and out of the home even at night. She spends her time mainly on the street. She is incontinent of urine and bowel requiring total assistance from staff in cleaning her room. Even without the influence of drugs, it has been noted that Ms. Prideaux continues to be delusional and has impaired insight and judgment. She continues to require staff's supervision and assistance in tending to her Activities of daily Living including taking her medications."

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process . . . ." (*Ungar v. Sarafite* (1964) 376 U.S. 575, 589.)  "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.  [Citations.]" (*Id*. at pp. 589-590.)  In this case, appellant did not show that her "potential" expert would say something material and helpful to the defense.  Accordingly, "[g]iven the deference necessarily due a state trial judge in regard to the denial or granting of continuances," the court's ruling does not support a claim of error under the federal Constitution.  (See *Ungar v. Sarafite, supra,* 376 U.S. at p. 591.)

*Alleged Violation of Appellant's Due Process Rights*

After concluding that appellant lacked the capacity to consent to the administration of her antipsychotic medications, as noted, the court ordered that she be involuntarily administered antipsychotic medication by the Department of State Hospitals as prescribed by her treating psychiatrist.  Appellant contends that the court's order vesting authority in her doctors and the state hospital improperly divested her public guardian/LPS conservator[4] from making her medical decisions thereby violating her due

---

[4]    LPS conservator stands for Lanterman-Petris-Short Act conservator.  " 'The LPS Act is a comprehensive scheme designed to address a variety of circumstances in which a member of the general population may need to be evaluated or treated for different lengths of time.  (§ 5150 [short-term emergency evaluation]; § 5250 [intensive 14–day treatment]; § 5300 [180–day commitment for the imminently dangerous]; § 5260 [extended commitment for the suicidal]; § 5350 [30–day temporary conservatorship or one-year conservatorship for the gravely disabled].) . . .  [¶]  A stated purpose of the LPS Act is to provide "prompt evaluation and treatment of persons [from the general population] with serious mental disorders."  (§ 5001, subd. (b).) . . .  To achieve this purpose, a number of LPS Act provisions allow a person to be removed from the general population in order to be civilly committed based on a probable cause determination made by a mental health or law enforcement professional, and then to challenge the civil commitment within a reasonable time afterwards.' [Citation.]" (*In re Conservatorship of*

process rights. Appellant argues that the record had sufficient evidence of her conservatorship to alert the court and counsel that an order vesting authority to consent to medication in her doctors at the state hospital was unnecessary and contrary to the intent of the Lanterman-Petris-Short Act. Defense counsel did not raise this argument below.

" ' "No procedural principle is more familiar . . . than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." [Citation.]' [Citation.]" (*People v. Saunders* (1993) 5 Cal.4th 580, 590.)

Appellant argues that the issue of whether the court had authority to divest the public guardian of the right to consent to medication and vest that authority solely in the doctors at the Department of State Hospitals is a question of law, requiring no reference to the particular facts of the case. Respectfully, we disagree with appellant that this issue requires no reference to the facts of this case.

As noted *ante*, there is some reference in the record to appellant being the subject of a conservatorship. However, the court's orders regarding that conservatorship are unknown. We cannot presume that appellant is subject to an involuntary medication order. (See *In re Qawi* (2004) 32 Cal.4th 1, 18-19 [the long term LPS Act conservatee possesses the right to refuse antipsychotic medication absent a determination of incompetence and the LPS conservatee can be compelled by their conservator to accept medical treatment *only* if such treatment is authorized in the court order creating the conservatorship or in a subsequent court order].) Since we have no way of knowing what

---

*Amanda B*. (2007) 149 Cal.App.4th 342. 344, fn. 1.) A conservatorship under the LPS Act is governed by Welfare and Institutions Code section 5000 et seq. As relevant here Welfare and Institutions Code section 5358 subdivision (b) provides "A conservator shall also have the right, *if specified in the court order*, to require his or her conservatee to receive treatment related specifically to remedying or preventing the recurrence of the conservatee being gravely disabled, or to require his or her conservatee to receive routine medical treatment unrelated to remedying or preventing the recurrence of the consevatee's being gravely disabled. . . ."

LPS Act orders are in place in this case, we have no way to tell if the trial court's order vesting the authority to medicate appellant in appellant's doctors at the state hospital divested appellant's conservator of any rights regarding compelling appellant to take her antipsychotic medications.[5] Simply put, the record is not sufficiently developed to resolve the determinative issue.

Alternatively, appellant argues that trial counsel provided ineffective assistance of counsel in failing to object to the court's order.

Effectively, appellant concedes that this was a civil commitment proceeding, but argues that she was still entitled to the effective assistance of counsel at the hearing. We will assume for the sake of argument that appellant is correct. (See e.g. *People v. Medina* (2009) 171 Cal.App.4th 805, 819 [assuming the constitutional right to effective assistance of counsel in a SVP case]; *People v. Crosswhite* (2002) 101 Cal.App.4th 494, 503 [assuming a right to effective assistance of counsel in NGI extension proceedings]; *People v. Leonard* (2000) 78 Cal.App.4th 776, 784 [assuming the right to effective assistance of counsel in SVP proceedings]; *People v. Williams* (1999) 77 Cal.App.4th 436, 461 [assuming the right to the effective assistance of counsel in MDO cases].)

The test for ineffective assistance of counsel emanates from decisions of both the United States and California Supreme Courts. We consider " 'whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome.' " (*People v. Carter* (2005) 36 Cal.4th 1114, 1189 (*Carter*), citing *Strickland v. Washington* (1984) 466 U.S. 668, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 217.) As a reviewing court we presume that counsel was competent and that his or her conduct was the basis of sound tactical decisions. (*Carter, supra,* 36 Cal.4th at p. 1189.)

---

5    The record indicates that appellant's conservator is Christina Remigio.

9

Accordingly, the burden is on appellant to demonstrate that her attorney was inadequate under the constitutional standard. (*Strickland v. Washington, supra,* 466 U.S. at p. 687.)

Appellant's first hurdle is less a substantive one than a principle of appellate practice. "If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation." (*Carter, supra,* 36 Cal.4th at p. 1189.) Otherwise, the claim may be raised only by a petition for writ of habeas corpus. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.) Actions taken or not taken by counsel are "typically motivated by considerations not reflected in the record. It is for this reason that writ review of claims of ineffective assistance of counsel is the preferred review procedure. Evidence of the reasons for counsel's tactics, and evidence of the standard of legal practice in the community as to a specific tactic, can be presented by declarations or other evidence filed with the writ petition." (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 243; see also *People v. Mendoza Tello, supra,* at pp. 266-267.) An ineffective assistance claim may be reviewed on direct appeal only where "there simply could be no satisfactory explanation" for counsel's action or inaction. (*In re Dennis H.* (2001) 88 Cal.App.4th 94, 98, fn. 1.)

Appellant argues that there could be no tactical reason for permitting the court to convene an unnecessary hearing to divest the conservator of her statutory right to consent to medication for appellant. Again, respectfully, we disagree.

In relevant part, Penal Code section 1370, subdivision (a)(1)(F)(2) provides, "Prior to making the order directing that the defendant be confined in a state hospital or other treatment facility or placed on outpatient status, the court *shall* proceed as follows: . . . [¶] (B) The court *shall* hear and determine whether the defendant lacks capacity to make decisions regarding the administration of antipsychotic medication, and shall proceed as follows: [¶] (i) The court *shall* hear and determine whether any of the following is true:

10

[¶] (I) The defendant lacks capacity to make decisions regarding antipsychotic medication, the defendant's mental disorder requires medical treatment with antipsychotic medication, and, if the defendant's mental disorder is not treated with antipsychotic medication, it is probable that serious harm to the physical or mental health of the patient will result. Probability of serious harm to the physical or mental health of the defendant requires evidence that the defendant is presently suffering adverse effects to his or her physical or mental health, or the defendant has previously suffered these effects as a result of a mental disorder and his or her condition is substantially deteriorating. The fact that a defendant has a diagnosis of a mental disorder does not alone establish probability of serious harm to the physical or mental health of the defendant. . . . [¶] (ii) If the court finds any of the conditions described in clause (i) to be true, the court *shall issue an order authorizing the treatment facility to involuntarily administer antipsychotic medication to the defendant when and as prescribed by the defendant's treating psychiatrist*." (Italics added.) "Ordinarily, the term 'shall' is interpreted as mandatory and not permissive. Indeed, 'the presumption [is] that the word "shall" in a statute is ordinarily deemed mandatory and "may" permissive.' [Citation.]" (*People v. Standish* (2006) 38 Cal.4th 858, 869.)

We must assume that counsel was aware of the foregoing and that once the court determined that appellant was mentally incompetent to stand trial and CONREP recommended a hospital placement, the court was mandated by Penal Code section 1370 to hold a hearing on whether appellant lacked the capacity to make decisions regarding the administration of her antipsychotic medication; and once the court concluded that she did, the court was mandated to issue the order authorizing the treatment facility to involuntarily administer antipsychotic medication to appellant. Any objection by counsel to the convening of a capacity hearing and the resulting order would have been futile. A

11

failure to make a futile or non-meritorious motion does not constitute ineffective assistance.  (*People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 836.)[6]

Appellant has failed to overcome the presumption that under the circumstances, the challenged omission could be considered sound strategy on counsel's part.  (*People v. Duncan* (1991) 53 Cal.3d 955, 966.)

In sum, we reject appellant's ineffective assistance of counsel claim.

*Disposition*

The trial court's commitment order dated January 4, 2013, is affirmed.


_____

ELIA, Acting P. J.



WE CONCUR:




_____

MIHARA, J.




_____

GROVER, J.

_____

[6]     Appellant provides no legal authority and we have found none to support her argument that a "LPS conservatorship takes precedence over other statutes, unless and until it terminates and is not renewed."