Filed 2/16/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G052951 |
|        v. | (Super. Ct. No. 09NF2515) |
| FARIS NADER ALSAFAR, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, David A. Hoffer, Judge. Dismissed as moot.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

The Mentally Disordered Offenders Act (Pen. Code, § 2960 et seq.)[1] provides for involuntary civil commitment as a condition of parole for prisoners who are found to have a "severe mental disorder" if certain conditions are met. (§ 2962, subds. (a)-(f).) The commitment is for a term of one year and the district attorney may extend the commitment annually for an additional year by filing a petition. (§ 2972, subds. (c), (e).)

Faris Nader Alsafar appeals from an order extending his period of commitment to a state mental hospital as a mentally disordered offender (MDO). He contends the trial court violated his constitutional right to equal protection when it compelled him to testify over his objection at the trial to determine whether his commitment should be extended. Alsafar argues that because persons subject to civil commitment after being found not guilty by reason of insanity (NGI) have a statutory right, pursuant to section 1026.5, subdivision (b)(7) (hereafter section 1026.5(b)(7)), not to be compelled to testify in proceedings to extend their commitments (*Hudec v. Superior Court* (2015) 60 Cal.4th 815, 832 (*Hudec*)), so should a person facing commitment as a MDO. He points out that this right has been extended to commitment proceedings for sexually violent predators (SVP) by application of equal protection principles. (*People v. Curlee* (2015) 237 Cal.App.4th 709, 716-722 (*Curlee*).) He concludes NGI's, SVP's, and MDO's are all similarly situated with respect to civil commitment procedures. The Attorney General makes several arguments to support her theory it was not a denial of equal protection to treat MDO's differently from NGI's, and any disparate treatment was related to a legitimate government purpose. Alternatively, she maintains any error was harmless, applying the *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) standard of review.

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

After briefing was completed in this case, our colleagues in Division Two, of the Fourth District, published *People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447-1448 (*Dunley*), holding MDO's, SVP's, and NGI's are all similarly situated with respect to the testimonial privilege provided for in section 1026.5(b)(7). We asked the parties to submit supplemental letter briefs discussing this recently decided opinion. In addition, it looked as if Alsafar's one-year commitment order may have expired while the appeal was pending due to this court's pressing caseload. We ordered the parties to notify the court if there was a new commitment order, and if this ruling rendered the appeal moot.

After considering the parties' letter briefs, we conclude the legal reasoning in the *Dunley* case is persuasive, and we adopt its holding. As for the mootness issue, the parties discuss the fact Alsafar was recommitted on December 6, 2016, based entirely on documentary evidence; he was not forced to testify. Because evidence of this proceeding is not contained in our record, on our own motion we take judicial notice of the relevant minute orders (dated October 18, 2016, and December 6, 2016), from the superior court file in this case. (Evid. Code, §§ 455, 459.)

We conclude the question of equal protection is a legal issue of continuing public importance that is likely to reoccur in MDO proceedings. A reviewing court may exercise its inherent discretion to resolve an issue rendered moot by subsequent events if the question to be decided is of continuing public importance and is a question capable of repetition, yet evading review. (*Laurie S. v. Superior Court* (1994) 26 Cal.App.4th 195, 199.) Because Alsafar has been recommitted without being required to testify, the issue of equal protection is now moot as to him.

A reversal can have no practical effect or provide Alsafar with effective relief. (*People v. Gregerson* (2011) 202 Cal.App.4th 306, 321 (*Gregerson*).) Accordingly, we need not direct the court to hold a new hearing, but we will decide the briefed issue to clarify the law. We dismiss the appeal as moot.

3

# I

In October 2009 Alsafar was convicted of arson of a structure (§ 451, subd. (c)), and was sentenced to two years in prison. In 2013, the court determined Alsafar was a MDO, and he was committed to a state hospital. The following year, Alsafar stipulated to a one year extension of his commitment.

In 2015, Alsafar opposed the district attorney's petition for a second extension. At the trial on the petition, 30-year-old Alsafar was called as a witness by the district attorney and was forced to testify over his objection. Alsafar stated he suffered from depression, hallucinations, and schizophrenia. He admitted to previously using heroin and methamphetamine. He burned down the building in 2009 because he believed people were after him and the fire would let him escape. He made sure no one was inside the building before starting the fire and he called 911 afterwards to turn himself in.

Alsafar testified he was sent to Atascadero State Hospital (Atascadero). He believed his orthodontist was the devil because he heard his voice in the Orange County jail. He stated he met God on his third visit to the jail, and they had a conversation. Alsafar stated he was taking psychiatric medications that sometimes made him slur his speech. He planned to go to University of California Irvine medical center when he was released because he admitted he may need future psychiatric care. He conceded he heard voices and he could not take care of himself. Alsafar did not believe he needed to be committed to Atascadero because he was not a danger to himself or others, and he had "learned [his] lesson" not to commit arson again.

Alsafar stated he did not have a Wellness Recovery Action Plan (WRAP) because he did not like to attend group meetings. However, he took his medication voluntarily and planned to check himself into a hospital if needed. He had been homeless before and was familiar with how to receive public benefits and other life necessities from charity.

Forensic psychologist, Jennifer Bosch, testified based on her review of 4,600 pages of records, two interviews with Alsafar, and her observation of him during his trial testimony. She was originally appointed in 2013 to assess Alsafar. Bosch began her testimony by describing the circumstances of the underlying offense. She stated Alsafar was living in an abandoned building and he set fire to it because he believed it was owned by the Catholic church and children were being molested there. After watching the building burn, he took a bus to Newport Beach and called 911 to report the crime and turn himself in. She stated Alsafar had been a patient at Atascadero since 2010. Records showed he suffered from a schizoaffective bipolar disorder, as well as a poly-substance dependency. She described the symptoms of these disorders and opined Alsafar's case was severe. Bosch also described Alsafar's history of hospitalizations. His first hospitalization occurred when he was 16 or 17 years old and, at that time, he also began receiving social security due to his mental health disability.

Bosch did not believe Alsafar's mental disorder was in remission. In support of this conclusion, she referred to some of Alsafar's testimony in court. She also described a statement he made during an interview with her, in which he stated he was a dog and God wanted him to be a dog. She opined the records indicated he was not in remission because he was experiencing paranoia, delusions, and hallucinations. He believed others intended to harm him and that he could speak with God. Alsafar told her that he did not believe he had a mental illness, and they discussed his drug usage. She explained drug usage can "exacerbate the [mental illness] symptoms" and cause the person to "become highly unpredictable."

Bosch testified Alsafar's mental disorder was a life-long disease that would require treatment throughout his life. She stated Alsafar could receive psychiatric help, and assistance from social workers, nurses and psychologists at Atascadero. She opined the best treatment plan was medication in addition to individual and group therapy. She concluded Alsafar represented a substantial danger of physical harm to others for the

5

following reasons: "[T]o start with, [Alsafar] has a long-standing history of when he's symptomatic of being aggressive. I think there is over at least 100, possibly 150 incident reports from when he was in jail or incarcerated . . . even prior to becoming a [MDO]. [¶] Once he was admitted to the hospital, there is a plethora of records, notes to indicate that he has been aggressive to both peers and staff." Bosch recounted a violent incident involving Alsafar that occurred just prior to her October 2015 interview with him. She believed Alsafar needed more time at Atascadero due to his "lack of insight into his mental illness, inability to recognize triggers, lack of tools to address substance abuse, and historical substance abuse."

II

*A. Is the Appeal Moot?*

This same issue was discussed in the *Dunley* case, as follows: "A case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief. [Citation.] By the nature of MDO proceedings, in which a new commitment order must be sought every year, issues arising in such proceedings can most often not be decided on appeal quickly enough to provide any relief to the person committed. That is the case here. . . . A reversal of appellant's current commitment order would have no effect on the pending petition. However, it is appropriate to address the issues raised in this appeal because they are important legal issues that are likely to reoccur "'while evading appellate review.'" [Citation.] Accordingly, we have chosen to address these issues, but we will dismiss the appeal as moot. [Citation.]" (*Dunley, supra,* 247 Cal.App.4th at p. 1445.)

Alsafar's counsel argues the appeal in this case is not moot because the *Dunley* case is factually distinguishable. We acknowledge the cases differ, but the distinction does not make a difference. In the *Dunley* case, like in the case before us, the recommitment order expired while the appeal was pending. (*Dunley, supra,* 247 Cal.App.4th at p. 1445.) The case differs from ours in that the new petition to recommit

6

Dunley was denied "based on the trial court's finding that [he] no longer [met] the criteria for commitment as [a] MDO." (*Ibid.*) Whereas, Alsafar's recommitment petition was granted.

Alsafar argues the *Dunley* court did not hold a subsequent recommitment rendered the appeal moot, but rather it was because "an expired and not renewed commitment could have no practical effect on him." He maintains that when a MDO is not properly committed within a given year, he must be released from continued confinement.[2] However, the case cited by Alsafar to support this theory of release is inapt. In *People v. Allen* (2007) 42 Cal.4th 91, 101-105 (*Allen*) the Supreme Court held the provisions in section 2972, subdivision (e), were not directory but mandatory, and the People's failure to file a new petition before the end of the commitment period of one year violated Allen's due process rights and took him out of the jurisdiction of the MDO Act. The issue decided in the *Allen* case was whether the trial court had authority to extend an involuntary MDO commitment *after* the prior commitment had terminated. (*Id.* at p. 94.) No such jurisdictional concerns exist in Alsafar's case. There is no question the prosecutor timely filed the recommitment petition and the involuntary commitment was never discontinued. The court did not lose jurisdiction under the MDO Act.

If this appeal had been heard and decided before the one-year timeline, we could have given Alsafar the effective remedy of a rehearing on the petition. Unfortunately, the time has passed and a rehearing would have no effect because Alsafar has been recommitted pursuant to a properly filed petition and after a hearing in which he received the relief he seeks from us.

---

[2] Alsafar's counsel suggests her client could be confined under another commitment scheme such as the Lanterman-Petris-Short Act (LPS Act). (Welf. & Inst. Code, § 5000 et seq.)

7

We have "inherent power to retain the matter, even if it is technically moot. [Citations.]" (*People v. Williams* (1999) 77 Cal.App.4th 436, 441, fn. 2 (*Williams*) [although appeal from expired MDO commitment order, court reached procedural issues that were "important and of continuing interest"].) "'As a general rule, an appellate court only decides actual controversies. It is not the function of the appellate court to render opinions """'upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it.'"""' [Citation.] "[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief.'" [Citation.] . . . [¶] But appellant raises important procedural issues concerning section 2972 that are ""'capable of repetition, yet evading review.'"" [Citations.]" (*Gregerson, supra,* 202 Cal.App.4th at p. 321; accord, *People v. Rish* (2008) 163 Cal.App.4th 1370, 1380.)

We conclude Alsafar has raised an important procedural issue that is not only of "important and of continuing interest" but is also one capable of repetition, but evading review. (*Gregerson, supra,* 202 Cal.App.4th at p. 321; *Williams, supra,* 77 Cal.App.4th at p. 441, fn. 2.) We reject the Attorney General's argument to ignore the issue because recent cases like *Curlee* and *People v. Landau* (2016) 246 Cal.App.4th 850 (*Landau*)[3] "demonstrate that the issue presented here is not likely to evade review in future cases." Those cases held SVP's and NGI's are similarly situated for purpose of whether they may be compelled to testify at their commitment hearings. (*Landau, supra,* 246 Cal.App.4th at p. 864; *Curlee, supra,* 237 Cal.App.4th at p. 721.) In the respondent's brief in *this* case, the Attorney General argued NGI's and MDO's are not similarly situated and the holding in *Curlee* "was incorrect and should not be followed." Moreover, the Attorney General has taken the position this court need not follow the

_____

[3] This court agreed with the reasoning in *Curlee, supra,* 237 Cal.App.4th 709, that SVP's were entitled to the same procedural protection as NGI's. (*Landau, supra,* 246 Cal.App.4th at p. 864.)

8

*Dunley* decision because it is from a different division of the Fourth District (not because the reasoning is flawed). Accordingly, we will address the merits of Alsafar's appeal.

B. *Was there an Equal Protection Violation?*

Alsafar maintains he was denied equal protection when the trial court required him to testify, over his objection, for the district attorney at his MDO recommitment hearing. The trial court agreed with the district attorney's argument that case authority holding a NGI could not be compelled to testify (*Hudec, supra,* 60 Cal.4th 815), did not apply to a MDO. The trial court did not have the benefit of two published opinions holding SVP's were entitled to the same procedural protections as MDO's. (*Landau, supra,* 246 Cal.App.4th at p. 864; *Curlee, supra,* 237 Cal.App.4th at p. 721.) More importantly, the court did not have the advantage of the decision in *Dunley, supra,* 247 Cal.App.4th at pp. 1447-1450, holding MDO's are similarly situated to NGI's and SVP's with respect to the testimonial privilege and for purposes of equal protection. We agree with *Dunley's* well reasoned decision, and note the Attorney General does not point to any reason to reconsider the issue.

The Attorney General also asserts that any error in compelling Alsafar's testimony was harmless under *Watson, supra,* 46 Cal.2d 818. She asserts *Watson* applies because the right not to be compelled to testify in a MDO hearing arises solely from state law. Applying this standard, the Attorney General argues that even if there was an equal protection violation, the error was harmless because Alsafar's testimony was cumulative to other evidence introduced through other witnesses.

We need not address the issue of which standard of review applies because we have dismissed the appeal as moot. However, we direct the Attorney General's attention to the large body of case law that agrees to the following: "'By calling the person in its case-in-chief, the state is essentially saying that his or her testimony is necessary for the state to prove its case. We have no doubt that a committee so compelled to testify is prejudiced under these circumstances. The California Supreme

9

Court noted in *Cramer v. Tyars* (1979) 23 Cal.3d 131, that permitting the jury to observe the person sought to be committed and to hear him speak and respond provided 'the most reliable proof and probative indicator of the person's present mental condition.' [Citation.] As such, we cannot conclude that compelling [the committee] to testify, even if his testimony was in some regards cumulative to that of other witnesses, was harmless error." [Citation.]' (. . . *Curlee, supra*, 237 Cal.App.4th at p. 722.)" (*Landau, supra*, 246 Cal.App.4th at p. 865; accord *People v. Haynie* (2004) 116 Cal.App.4th 1224, 1230 ["The right to not be compelled to testify against oneself is clearly and relevantly implicated when a person is called by the state to testify in a proceeding to recommit him or her even if what is said on the witness stand is not per se incriminating"].)

### III

The appeal is dismissed as moot.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.

10