Filed 4/15/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Sebastian C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>SEBASTIAN C.,<br><br>        Defendant and Appellant. | A172531<br><br>(Solano County Super. Ct. No. J45299) |

Appellant Sebastian C., now 19 years old, was committed to a secure youth treatment facility pursuant to Welfare and Institutions Code[1] section 875 at the age of 14 after he admitted to having committed voluntary manslaughter. In this appeal, he challenges the juvenile court's denial of his request to be released from the secure facility and placed in the home of his adult sister. He contends the trial court erred by concluding as a matter of statutory interpretation that his sister's home did not qualify as a "less restrictive program" under section 875, subdivision (f). The Attorney General argues that the trial court's ruling is correct because, among other things, the sister's home is not a less restrictive program under the plain language of the statute. The Attorney General also argues that the appeal should be

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

1

dismissed because Sebastian's subsequent placement in his mother's home as part of a less restrictive program has rendered the appeal moot.

Because the proper interpretation of section 875, subdivision (f) is a matter of broad public interest, we resolve the briefed issue to clarify that placement in a family home with supervision and programming provided by a community-based agency can meet the requirements of a less restrictive program under section 875, subdivision (f). Because the appeal is moot, however, we need not decide whether the court abused its discretion in denying the requested placement, and therefore dismiss the appeal. (See *People v. Alsafar* (2017) 8 Cal.App.5th 880, 883.)

## BACKGROUND

### I.

Under section 875, subdivision (b)(1), when committing a ward to a secure youth treatment facility, the juvenile court is directed to "set a baseline term of confinement" that represents "the time in custody necessary to meet the developmental and treatment needs of the ward and to prepare the ward for discharge to a period of probation supervision in the community." Under subdivision (c)(1), "the court shall additionally set a maximum term of confinement for the ward based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the court and as deemed appropriate to achieve rehabilitation."

At progress review hearings held every six months under section 875, subdivision (e)(1)(A), the court may reduce the baseline term or "may additionally order that the ward be assigned to a less restrictive program, as provided in subdivision (f)." Subdivision (f) reads in relevant part, "(1) Upon a motion from the probation department or the ward, the court may order that the ward be transferred from a secure youth treatment facility to a less

2

restrictive program, such as a halfway house, a camp or ranch, or a community residential or nonresidential service program.  The purpose of a less restrictive program is to facilitate the safe and successful reintegration of the ward into the community. . . .   Approval of the request for a less restrictive program shall be made only upon the court's determination that the ward has made substantial progress toward the goals of the individual rehabilitation plan described in subdivision (d) and that placement is consistent with the goals of youth rehabilitation and community safety.  In making its determination, the court shall consider both of the following factors:  [¶]  (A) The ward's overall progress in relation to the rehabilitation plan during the period of confinement in a secure youth treatment facility.  [¶]  (B) The programming and community transition services to be provided, or coordinated by the less restrictive program, including, but not limited to, any educational, vocational, counseling, housing, or other services made available through the program.  [¶]  (2) In any order transferring the ward from a secure youth treatment facility to a less restrictive program, . . . [t]he court shall set the length of time the ward is to remain in a less restrictive program, not to exceed the remainder of the baseline or modified baseline term. . . .  If, after placement in a less restrictive program, the court determines that the ward has materially failed to comply with the court-ordered conditions of placement in the program, the court may modify the terms and conditions of placement in the program or may order the ward to be returned to a secure youth treatment facility for the remainder of the baseline term, or modified baseline term, and subject to further periodic review hearings, as provided in subdivision (e) and to the maximum confinement provisions of subdivision (c).  If the ward is returned to the secure youth treatment facility under the provisions of this paragraph, the

3

ward's baseline or modified baseline term shall be adjusted to include credit for the time served by the ward in the less restrictive program."

"[A]t the conclusion of the baseline confinement term, including any modified baseline term, [the court shall] hold a probation discharge hearing for the ward.  For a ward who has been placed in a less restrictive program described in subdivision (f), the probation discharge hearing shall occur at the end of the period, or modified period, of placement that has been ordered by the court.  At the discharge hearing, the court shall review the ward's progress toward meeting the goals of the individual rehabilitation plan and the recommendations of counsel, the probation department, and any other agencies or individuals having information the court deems necessary.  At the conclusion of the hearing, the court shall order that the ward be discharged to a period of probation supervision in the community under conditions approved by the court, unless the court finds that the ward constitutes a substantial risk of imminent harm to others in the community if released from custody.  If the court so finds, the ward may be retained in custody in a secure youth treatment facility for up to one additional year of confinement, subject to the review hearing and probation discharge hearing provisions of this subdivision and subject to the maximum confinement provisions of subdivision (c)."  (§ 875, subd. (e)(3).)

## II.

In August 2022, Sebastian was committed to Solano County's secure youth treatment facility for a baseline term of four years after he admitted having committed voluntary manslaughter (Pen. Code, § 192, subd. (a)) and having personally used a firearm in the commission of the offense (Pen. Code, § 12022.5, subd. (a)).  (*People v. Sebastian C.* (*In re Sebastian C.*) (Dec. 5, 2023, A167599) [nonpub. opn.].)  At review hearings held pursuant to section 875, subdivision (e)(1)(A) at six-month intervals between March 2023 and

October 2024, the juvenile court reduced his baseline term by a total of nine and one-half months.

In January 2025, with approximately nine months remaining on his baseline term, the probation department petitioned the court to approve Sebastian's "step-down into foster care as a Less Restrictive Program." It requested that the court enter a general placement order for Sebastian, which would allow him to attain status as a foster youth and be placed in a Supervised Independent Living Placement (SILP) with his adult sister. It explained that all re-entry options were considered but that the "[o]ther Less Restrictive Program[] . . . options available to him . . . will not designate him as a foster youth" and thus, do not allow access to services and funding under the extended foster care program. The probation department reported that because Sebastian was recently reassessed at a moderate risk to reoffend, it was recommending a "very high level of community supervision." According to the probation department, "[w]eekly contacts and frequent home visits will monitor compliance along with his whereabouts. Referrals to appropriate services and interventions will facilitate continued efforts to achieve rehabilitating [sic]. A case worker will monitor and facilitate his success towards his placement case plan and Transitional Independent Living Plan []. He will be required to attend school and/or maintain employment. His recommended terms include drug testing and search and seizure. Should he fail to demonstrate compliance, he may return to [the secure youth treatment facility] to continue treatment."

An addendum submitted to the trial court provided additional detail on the services to be provided. It reads in part: "Upon entering the community, [Sebastian] will be referred to community-based interventions that will continue to meet his treatment needs. He will be referred to Seneca family of

5

Agencies to ensure he remains connected to therapy. He will be referred to First Place for Youth to engage in [Independent Living Placement] workshops. He will have the option to remain connected to his mentor who has met with him during his commitment. He will have weekly contact with Probation to monitor compliance with his terms of supervisions, as well as to ensure progress towards his Individualized Rehabilitation Plan (IRP) and placement case plan goals. Frequent home visits will serve as additional means to monitor success. During his contacts with Probation, he will work one-on-one to complete written cognitive behavioral tools to practice and reinforce the skills he learned during his commitment to RISE."

The juvenile court denied the request. The court explained that section 875 "very clearly states here that the less restrictive program is supposed to be providing the community transition services. In fact, [subdivision] (f)(1)(B) says programming and community transition services to be provided or coordinated by the less restrictive program[], including, but not limited to, any educational, vocational, counseling, housing or other services made available through the program. I do not believe his sister's house is a program, and this is very clear what the statute requires." The court noted that the county only has one identified less restrictive program and also added, "I did reach out to others to find out if this is a less restrictive program and it doesn't qualify." The trial court also rejected defense counsel's argument that the proposed "less restrictive program" included not just the sister's housing but her coordination with the probation department for supervision and services.

In his opening brief, Sebastian notes that in March 2025, the juvenile court granted the probation department's petition to transfer Sebastian to the Rise Up House, the county's approved less restrictive program referenced

6

by the court above. At that time, Sebastian had approximately eight months remaining on his baseline term. In May 2025, however, the court ordered that Sebastian be remanded back to the county secure youth treatment facility based upon an allegation that he failed to comply with the rules of his release.

In response to this court's request for additional briefing regarding Sebastian's current placement, Sebastian's counsel wrote that on February 9, 2026, Sebastian was placed in the home of his mother as a less restrictive program. The supplemental briefing indicates that the order was issued by a different judge from the one who issued the order on appeal. At that time, Sebastian had served all of the baseline term ordered by the court. Sebastian's supplemental brief notes, however, that as a condition of his release, the parties stipulated to a one-year extension of his baseline term under section 875, subdivision (e)(3), so that, according to counsel, as of March 2026, nine months remained on Sebastian's baseline term during which he could still be returned to custody in the secure youth treatment facility.

## DISCUSSION

### I.

It is our "duty to decide ' " 'actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " ' [Citation.] '[T]he critical factor in considering whether an . . . appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error.' [Citation.] A court ordinarily will dismiss an appeal when it cannot grant effective relief, but may instead 'exercise its inherent discretion to resolve an issue when there remain "material questions for the court's determination" [citation],

7

where a "pending case poses an issue of broad public interest that is likely to recur" [citation], or where "there is a likelihood of recurrence of the controversy between the same parties or others." ' " (*In re David B.* (2017) 12 Cal.App.5th 633, 644.)

Here, a decision reversing the trial court's order rejecting placement with the sister will have no practical impact on Sebastian now or in the future. The court has since issued two step-down orders and he is currently placed in a less restrictive program with housing provided by his mother. The denial of his initial placement request will not alter his current placement nor will the reversal of that order impact any future placement requests.

Sebastian argues, however, that if the appeal is found to be moot, this court should "exercise its discretion to consider the issues on the merits for the purpose of providing guidance to the courts below about the implementation of this new statutory scheme." He argues that "[t]he probation department, courts and the parties themselves would benefit from clarification regarding what constitutes a less restrictive program and whether release to a family member's residence with probation department support in the form of intensive supervision and support services meets the requirements of a less restrictive program." In his supplemental briefing, he argues that if the placement in the home of his mother does not work out, which he asserts is not unlikely, he "could end up back before the court seeking an alternative placement in the home of his sister or other family member as a less restrictive program. If he comes before the judge who earlier rejected a family home as a less restrictive program, he may once again be denied this option."

8

The Attorney General disagrees that this appeal presents an issue of broad public interest that is likely to recur. The Attorney General argues: "Though appellant relies on a broad statutory interpretation of section 875 to level his argument . . ., his appeal largely concerns the court's application of section 875 to his particular request to be placed with his sister as a less restrictive program. . . . His argument that the juvenile court abused its discretion in failing to consider his sister's home as a less restrictive placement within the meaning of the statute—and subsequent denial of his request to transfer to his sister's home under that statute—turns on case-specific facts, including his individual progress with his personalized rehabilitation plan and at the [secure youth treatment facility], the programs, therapies, or benefits offered by transfer to his sister's home, and his potential danger to the community upon transfer. The resolution of circumstances unique to appellant alone would not provide helpful guidance in future cases."

The Attorney General's characterization of the court's ruling as involving only statutory application rather than interpretation is not entirely correct. The trial court clearly wrestled with whether and under what circumstances a family home could qualify as a less restrictive program. The Attorney General argues that the sister's home does not constitute a less restrictive program under the plain language of the statute. Interpretation of section 875, subdivision (f) is a matter of public importance and clarification on the definition of a less restrictive program under that provision would be helpful both to trial courts in general and to Sebastian should the issue recur in his case. Accordingly, we exercise our discretion to consider the merits of this limited issue.

9

## II.

As set forth above, section 875, subdivision (f)(1) authorizes the trial court to issue an order at a review hearing transferring a ward "from a secure youth treatment facility to [a] less restrictive program, such as a halfway house, a camp or ranch, or a *community residential or nonresidential service program*." (Italics added.) That subdivision states that the "purpose of a less restrictive program is to facilitate the safe and successful reintegration of the ward into the community." (*Ibid.*) In deciding whether the placement is consistent with the goals of youth rehabilitation and community safety, the statute directs the court to consider "[t]he programming and community transition services to be provided, or coordinated by the less restrictive program, including, but not limited to, any educational, vocational, counseling, housing, or other services made available through the program." (§ 875, subd. (f)(1)(B).)

The trial court found, and the Attorney General agrees, that the sister's home was not a "program" under the plain language of subdivision (f)(1)(B) of section 875 because it does not provide or coordinate programing and community transition services. We are not persuaded by this reading of the statute. Subdivision (f)(1) identifies a "community . . . nonresidential service program" as an example of a less restrictive program. Subdivision (f)(1)(B) describes the programming and services the court should consider in deciding whether to approve the transfer request, but it does not purport to define "less restrictive program." And the word "any" in the list it provides—"including, but not limited to, *any* educational, vocational, counseling, housing, or other services" (italics added)—indicates that the program need not provide or coordinate *every* listed service in order to qualify as a less restrictive program. Thus, consistently with the statute, a ward could receive

10

programming or services from a community nonresidential service program while being housed in a relative's home.

Sebastian cites a document prepared by the Offices of Youth and Community Restoration (OYCR)[2] that identifies "prioritizing home" as a key component of less restrictive programs.  It explains:  "In light of the previously discussed components to consider when creating [less restrictive programs (LRPs)], it is important to emphasize that whenever possible, home with robust supports as detailed in youths' [individualized rehabilitation plans (IRPs)] should be utilized as less restrictive programs. . . .  If youth can receive the support they require as part of their IRP at home through community-based agencies, they should.  [¶]  Counties should leverage and build partnerships with existing agencies in the community to ensure that home is available as soon as possible for as many young people as possible."

The document offers the following example of a "Home-Based" less restrictive program:  "Advance Peace is an organization that works with young men involved in gun violence at their homes through the Peacemaker

---

[2] The OYCR, which is housed within the Health and Human Services Agency, was established by the Legislature in 2020 pursuant to section 2200 "to promote trauma responsive, culturally informed services for youth involved in the juvenile justice system that support the youths' successful transition into adulthood and help them become responsible, thriving, and engaged members of their communities." (Stats. 2020, ch. 337, § 50, eff. Sept. 30, 2020; § 2200, subd. (b); *In re Miguel C.* (2021) 69 Cal.App.5th 899, 907.)  Sebastian's request that we take judicial notice of the publication by the OCYR of a document entitled "Less Restrictive Programs: Considerations and Possibilities" is granted.  (https://oycr.ca.gov/wp-content/uploads/sites/346/2024/02/OYCR_OnePager_LRPs.pdf [as of 4/15/2026].)  Sebastian's request that this court take judicial notice of a Judicial Council of California Memorandum to Presiding Juvenile Court Judges entitled "Recent Legislative Changes Concerning Division of Juvenile Justice Realignment" is denied as unnecessary to our resolution of the appeal.

Fellowship.  The Fellowship is an 18-month mentorship program that delivers robust support and programming to youth at their respective homes based on their individual needs through community-based agencies. Individualized programming includes gang intervention, behavioral health treatment, substance use treatment, restorative programming, life skills development, and educational and vocational support, along with mentorship from credible messengers who share similar experiences.  Youth are also provided with income assistance through LifeMAP Milestone Allowances, which are incentive-based stipends for youth as they progress throughout their time in the Fellowship.  Since the creation of the Fellowship, rates of gun-related injuries have decreased, and members of the Fellowship have faced lower rates of rearrest [citation].  Advance Peace is a community-based organization that leverages both private funding and funding from government agencies to provide robust support and restorative programming that promote healing and accountability for youth at home, not through incarceration.  When considering home with support as an LRP for young people, Advance Peace's Peacemaker Fellowship can be looked to for inspiration."

We agree with Sebastian that OYCR's recommendation that less restrictive programs include placement within a relative's home, with supervision and programming provided by a community-based agency, is consistent with both the language and purpose of the statute.  In such circumstances, the less restrictive program is the "community . . . nonresidential service program," not just the family home.

The trial court expressed concern that what the probation department proposed as a less restrictive program was actually a disposition that would be appropriate following a probation discharge hearing under

12

subdivision (e)(3) of section 875, which is held at the conclusion of the baseline confinement term (including a modified baseline term). That subdivision provides in part: "At the discharge hearing, the court shall review the ward's progress toward meeting the goals of the individual rehabilitation plan and the recommendations of counsel, the probation department, and any other agencies or individuals having information the court deems necessary. At the conclusion of the hearing, the court shall order that the ward be discharged to a period of probation supervision in the community under conditions approved by the court, unless the court finds that the ward constitutes a substantial risk of imminent harm to others in the community if released from custody." (§ 875, subd. (e)(3).)

We do not think the statute's provisions for probation supervision after discharge imply that placement in a relative's home cannot constitute a less restrictive program. The statute uses similar language to describe the purposes of a less restrictive program and of probation conditions following discharge. Again, it provides that "[t]he purpose of a less restrictive program is to facilitate the safe and successful reintegration of the ward into the community." (§ 875, subd. (f)(1).) At the discharge hearing, "the court shall determine the reasonable conditions of probation that are suitable to meet the developmental needs and circumstances of the ward and to facilitate the ward's successful reentry into the community." (*Id.*, subd. (e)(4).) The overlap in these descriptions suggests that the requirements imposed on a ward could look similar under each subdivision, although there might be differences in the kind, source, or amount of programming and services received. For a ward whose progress warrants it, such a less restrictive program is not an improper effort to jump to the discharge phase of the case

13

but something the statute appears to contemplate in appropriate circumstances.

The Attorney General alternatively argues that the probation department failed to supply the juvenile court with enough information about the programming or services Sebastian would receive, and that in the absence of that information "the court properly determined that placement with his sister was not a 'less restrictive *program*' within the meaning of section 875." We do not see the issue here as one of statutory meaning. Certainly, the juvenile court must be provided with sufficient information regarding "any educational, vocational, counseling, housing, or other services made available through the program" to enable it to properly evaluate whether the placement is consistent with the goals of youth rehabilitation and community safety. (§ 875, subd. (f)(1).) Here, the court could have required more details from the probation department before deciding whether to approve the recommended transfer. But we disagree that what is described in the addendum quoted above cannot constitute a less restrictive program as a matter of law. Because the order denying placement is moot, we need not further opine on the probation department's proposal.

## DISPOSITION

The appeal is dismissed as moot.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SWEET, J. *

---

*Judge of the Marin Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14

| | |
|---|---|
| Trial Court: | Solano County Superior Court |
| Trial Judge: | Honorable Terrye Davis |
| Counsel for Defendant and Appellant: | Eileen Manning-Villar, under appointment by the Court of Appeal |
| Counsel for Plaintiff and Respondent: | Rob Bonta<br>Attorney General of California<br>Charles C. Ragland<br>Chief Assistant Attorney General<br>Jeffrey M. Laurence<br>Senior Assistant Attorney General<br>Catherine A. Rivlin<br>Supervising Deputy Attorney General<br>Maya Bourgeois<br>Deputy Attorney General |